## Hackett *versus* The Commonwealth.

1. An indictment charging that S. H., with an axe, the dwelling-house of D. H. in the night time, feloniously and burglariously did break, and with the intent with said axe to open and enter, and the goods and chattels of the said D. H. in the said dwelling-house being, feloniously and burglariously to steal and carry away, but said S. H. did then and there fail in the perpetration of said offence, &c., contains a sufficient description of the misdemeanor charged.

2. Such a misdemeanor is punishable by imprisonment in the State Penitentiary for the term of two years and one month. *

3. Though an indictment for a misdemeanor be found in the Quarter Sessions, and be triable therein, it may be certified into the Court of Oyer and Terminer, and there tried.

ERROR to the Oyer and Terminer of *Potter county.*

An indictment was found in the Court of Quarter Sessions of Potter county, against Seymour Hackett for an attempt to commit a burglary. It was as follows :—

Potter County, ss :

The grand inquest of the Commonwealth of Pennsylvania, inquiring in and for the body of the county of Potter, upon their oaths and affirmations, respectively do present that Seymour Hackett, late of the county aforesaid, on the 24th day of June, A. D. one

[Hackett *v.* The Commonwealth.]

thousand eight hundred and forty-eight, in *the night-time* of the said day aforesaid, at the township of Roulet, in the county aforesaid, and within the jurisdiction of this court, did attempt to commit an offence prohibited by law, to wit, with force and arms, with an axe and with a small axe commonly called a hatchet, with a wicked intent *on* the dwelling-house of Debold Hare a citizen of this State, in the night-time, feloniously and burglariously *did break* and with the intent with said axe and hatchet to open and enter, and the goods and chattels of the said Debold Hare, in the same dwelling-house being, feloniously and burglariously to steal and carry away, but said Seymour Hackett did then and there fail in the perpetration of said offence, and was interrupted and prevented in the execution of the same against the will of the said Seymour Hackett, and contrary to the statute in such case made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania.

C. DARRAGH, Att'y Gen., per JNO. S. MANN, Dept.

January 10, 1850, the indictment returned "a true bill," was certified from the Court of Quarter Sessions to the Court of Oyer and Terminer of Potter county. Same day, the defendant, being arraigned, plead not guilty. January 11, 1850, verdict of "guilty in manner and form as he stands indicted." January 12, 1850, defendant's counsel moved for an arrest of judgment, and filed as reasons,

1. Because the indictment does not charge in a legal, intelligible form, the commission of any offence.

2. Because the indictment has not a proper legal conclusion.

Same day, motion overruled by the court, and defendant being present, WILLISTON, J., pronounced sentence as follows:—

"The court sentence you, Seymour Hackett, to undergo imprisonment in the State Penitentiary in the county of Allegheny, for the term of two years and one calendar month, there to be fed, clothed, and treated as is prescribed by act of Assembly, and that you pay the costs of prosecution and stand committed until the sentence is complied with."

It was assigned for error:

1st. The court erred in denying the motion in arrest of judgment for the reasons given.

2d. The court erred in the sentence pronounced by them on the defendant.

3d. The Court of Oyer and Terminer had no jurisdiction of the case.

*S. P. Johnson*, for the defendant.—He contended that the offence charged is not a felony, but a misdemeanor. An *attempt* to commit

[Hackett *v.* The Commonwealth.]

a felony is only a misdemeanor: *Whar. Crim. Law* 562; 1 *Russ. on Crimes*, 46.  1 *Hawkins P. C.*, chap. 25, sec. 3, says that felony shall not be imputed to a bare intention to commit it; yet the party may be severely fined for such intention when manifested by some act: same book, chap. 55.  This indictment was found in the Quarter Sessions, which had jurisdiction to try the offence.  The Oyer and Terminer has exclusive jurisdiction over that class of offences only which are enumerated in the 15th section of the act of 16th June, 1836, *Dunlop* 743, 744, and has concurrent jurisdiction with the Quarter Sessions over other offences, when the indictment is found in the Oyer and Terminer; and the 17th section of same act, provides that "whenever any indictment shall be found in any Court of Quarter Sessions for any crime or offence *not triable therein*, it shall be the duty of such court to certify the same into the Court of Oyer and Terminer next to be holden in such county, &c."  The 14th section of that act limits the Oyer and Terminer jurisdiction, as to the trial of indictments found in the Quarter Sessions, to such as are certified by said court according to law.  This offence *being triable* in the Quarter Sessions where the case was when the indictment was found, no power therefore existed in that court *to certify it to the Oyer and Terminer*.  If this position be correct, the latter court had no jurisdiction of the case.

That the sentence is erroneous, is evident from the various acts of Assembly, and the numerous decisions of this court on that subject.  The 2d section of the act of 5th April, 1790, 2 *Smith* 531, provides for the punishment of robbery, burglary, and some other offences, and the 4th section enacts that "Every person convicted of bigamy, or of being an accessory after the fact in any felony, or of receiving stolen goods, knowing them to have been stolen, or of any other offence not capital, for which by the laws in force before the act entitled 'An act to amend the penal laws of this State,' (meaning this very act of 1790,) burning in the hand, cutting off the ears, nailing the ear or ears to the pillory, placing in and upon the pillory, whipping, or imprisonment for life is or may be inflicted, shall, instead of such punishment, be fined and imprisoned, at hard labor, fed and clothed, &c."—and the 7th section declares that every other felony, or misdemeanor, or offence whatsoever, not specially provided for by this act, may and shall be punished as heretofore. The act of 11th April, 1825, enumerates certain other crimes with their punishments, but this offence is not included.  Then follows the act of 23d April, 1829, *Dunlop* 420, repealing all former acts on that subject, so far as they were altered and supplied, in which murder in the second degree and a variety of other offences are enumerated, and the punishment allotted to each—and the 5th section re-enacts the 7th section of the act of 1790, recited above.  The punishment for the offence of which the plaintiff in error was convicted and sentenced is not prescribed in any of these cited acts,

[Hackett *v.* The Commonwealth.]

nor do we find that, at common law, or at any time before 1790, it was punished by burning in the hand, whipping, &c., according to the 4th section of the act of that year.    It is not designated as one of those *infamous* crimes made subject to such punishment: Kreamer *v.* Com'th, 3 *Bin.* 577; 1 *Ser. & R.* 139; 5 *Ser. & R.* 463, Rogers *v.* Com'th; 6 *id.* Scott *v.* Com'th; 7 *Barr* 371; 8 *id.* 223.

That the indictment has not that precision and certainty which is required: 4 *Black. Com.* 206; 5 *Term Rep.* 611; *Cro. Eliz.* 490; 2 *Burr.* 1127; 4 *Black. Com.* 206, note 10.

No counsel appeared for the Commonwealth.

The opinion of the court was delivered July 25, by

BURNSIDE, J.—The conviction in this case was for an attempt to commit a burglary.    The prisoner's counsel moved in arrest of judgment.    The motion was overruled.    This writ of error was allowed by the chief justice.

Three errors have been assigned in this court on behalf of the plaintiff in error.    No counsel appeared for the Commonwealth.

1st.  It is alleged, that the court erred in denying the motion in arrest of judgment, for the reasons given.    2d.  That the court erred in the sentence pronounced; and 3d, That the Oyer and Terminer had no jurisdiction.

It is contended the offence is charged as a felony, and is only a misdemeanor.    By the act of 1718, 2 *Smith's Laws* 575, it is provided, that if any person or persons shall be convicted of burglary, which is a breaking and entering into a dwelling-house of another, in the night-time, with intent to kill some reasonable creature, or to commit some other felony within the same house, whether the felonious intent be executed or not, he or they, so offending, within this province, being convicted thereof as aforesaid, shall suffer death, without benefit of clergy: 1 *Smith* 115, 2 *Smith* 575.  So our law remained, until our penal code was ameliorated in 1790.    The higher offences of murder, rape, robbery, arson, and burglary, were punished with death.    Prior to 1790, the attempt to commit either of these high offences was punished with pillory as well as other infamous inflictions.    I remember the stocks and pillory in the winter of 1792–3, when a small boy, going to school in Norristown. They were a terror to all the boys in the town.

This indictment is for an attempt to commit the crime of burglary, (among the highest known to our laws.)    The defendant, on the night of the 24th of June, 1848, with an axe and hatchet, broke the dwelling-house of Debold Hare, with intent feloniously and burglariously to enter, and the goods and chattels of the said Debold Hare, in the same dwelling-house being, feloniously and burglariously to steal and carry away.    There are many unnecessary words in this indictment, which I treat as merely surplusage.  The

[Hackett *v.* The Commonwealth.]

indictment is framed with sufficient certainty. It contains a sufficient description of the offence with which the prisoner stands charged. I need only refer to 1st *Chitty's Criminal Law*, 168, and the authorities there cited. Lord HALE complained, that in his day the strictness required in indictments was grown to be a blemish in the law and the administration of justice, and in consequence the greatest crimes had gone unpunished, by reason of these unseemly niceties : 2 *Hale's Pleas of the Crown* 193. The words that are superfluous may be rejected as surplusage : 1 *Leach* 474 ; 1 *Term Reports* 322 ; 1 *Chitty's Criminal Law* 174.

It is well settled, that an indictment for felony will not support a conviction for a misdemeanor : 3 *Strange* 1153 ; 1 *Leach* 12 ; *Archbold's Criminal Law* 106. But this is not an indictment for felony ; it is for a misdemeanor. The words feloniously and burglariously apply to the intent the prisoner had in view, to commit a felony and burglariously to steal, take, and carry away, and are not improperly used in this indictment. The conviction here was of a high misdemeanor.

The sentence is complained of because the learned counsel cannot find in any book, or in any act of Assembly, a sentence for an attempt to commit a burglary, or a definition of the offence. If sentences are found, they must be found in the eastern end of Pennsylvania. In attempts to commit this offence, the perpetrator is seldom arrested. The attempt must be in the night-time, and when made, generally at the dead hour of the night. The first object of the owners of the house is to protect their family and property, and drive off the marauder. It being in the dark, his identity is seldom known, and he makes his escape from justice. Where a conviction is had, it is clearly within the provisions of the 4th section of the act to ameliorate the penal laws of this state, passed the 5th of April, 1790, which provides that every person convicted of bigamy or of being an accessary after the fact, in any felony, or of receiving stolen goods, knowing them to be stolen, or of any other offence not capital, for which, by the laws in force, before the act entitled "An act to amend the penal laws of this State," burning in the hand, cutting off the ear, nailing the ear or ears to the pillory, placing in and upon the pillory, whipping, or imprisonment for life, is or may be inflicted, shall, instead of such parts of the punishment, be fined and sentenced to undergo in the like manner and be confined, kept to hard labor, fed and clothed as hereafter directed, for any term, not exceeding two years, which the court before whom such conviction shall be had, may and shall, in their discretion, think adapted to the nature and heinousness of the offence : 2 *Smith's Laws* 533. The legislature found it necessary to give the courts a further discretion, by the act of the 4th of April, 1807 : 2 *Smith's Laws* 555 : "Instead of two years imprisonment, to which the power of the courts of this

commonwealth is limited, in and by the fourth section of 'An act to reform the penal laws of this State,' the said courts respectively shall hereafter be invested with the power of extending the confinement in such cases to a period not exceeding seven years, in their discretion, according to the circumstances of the case before them : *Provided,* that the power thus conferred on the said courts shall not extend to offences enumerated in the said section, of bigamy, or of being accessary after the fact in any felony, or of receiving stolen goods, knowing them to have been stolen."

What offences had the legislature most in view, when they extended the discretion of the court to seven years? Most certainly the attempt to commit those that were formerly capital—the attempt to commit murder, rape, robbery, burglary, and arson, offences in themselves base and infamous, and always exhibiting depravity of heart.

But one other point remains to be considered. The indictment was found in the Court of Quarter Sessions of the Peace of Potter county, and duly certified into the Court of Oyer and Terminer, and there tried. It is contended that the 1st section of the act of the 16th of June, 1836, takes away the jurisdiction of the Oyer and Terminer. After carefully reviewing the whole act, we think such a construction would be inconsistent with several of its provisions. The act of the 14th of April, 1834, *Dunlop,* 2d. ed. 617, provides that courts of oyer and terminer and general, jail delivery shall be holden four times annually, in every county, at the several times appointed for holding the courts of Quarter Sessions, *although no special precept shall have been issued for that purpose.*

This act, as well as the act of the 16th June 1836, *Dunlop* 2d. ed., authorizes indictments to be certified from the Sessions, into the Oyer and Terminer. In the latter act, the legislature particularly mentions the offences that shall be commenced in the Oyer and Terminer. They also declare that the Oyer and Terminer shall have power to try indictments found in the Sessions, and certified by the said court, according to law. To make this act consistent, to give effect to all its provisions, cases originating in the Oyer and Terminer, and found by a grand jury in that court, and cases duly certified from the Sessions, may be tried in the Oyer and Terminer. Many of the lesser offences, such as the one under consideration, never ought to be tried in the Sessions in the absence of the law judge of that court.

The judgment is affirmed.