## Dougherty *versus* The Commonwealth.

1. In a trial for homicide, the record showed that the indictment was found in the Quarter Sessions; the defendant was admitted to bail by the Supreme Court, to appear at the Oyer and Terminer to answer the indictment at June sessions; a motion there by the defendant to quash the indictment was overruled, and the defendant pleaded; the jury found him guilty of manslaughter. On the 13th of July he was sentenced; on the 20th, a writ of error issued; on the 27th, the district attorney moved the court to certify the indictment into the Oyer and Terminer, "*nunc pro tunc*, as of March 9th." On the 29th, against the objection of the defendant, the motion was allowed. *Held*, that the record showed that the proceedings were irregular, and the sentence was reversed.

2. The record appearing to be that of the Quarter Sessions, the recognisance to appear in the Oyer and Terminer, and the order to certify into that court, could not be divided from the other parts.

3. The record showing that the defendant had been arraigned, tried, convicted and sentenced in the Quarter Sessions, the conviction and sentence were void for want of jurisdiction.

4. The exclusive jurisdiction to try and punish homicides, is in the Oyer and Terminer.

5. In capital felonies, it must appear by the record that the prisoner was present at the trial, verdict and passing sentence; his presence cannot be presumed.

6. When substantive parts of a proper record are wanting, they cannot be supplied by the presumption that all things were rightly done.

7. The sentence in this case was held to be erroneous because the record did not show that the prisoner was present when the jury were sworn, and the verdict rendered; nor that he was asked if he had anything to say why judgment should not be pronounced against him.

8. The Court of Quarter Sessions had authority to amend their record by the order *nunc pro tunc;* and the record was to be treated as if the certificate had been ordered on the 9th of March; but the Oyer and Terminer could not obtain jurisdiction except by the transmitting the order duly attested from the Quarter Sessions.

9. Such certificate should be filed in the Oyer and Terminer and noted on the docket, that the jurisdiction might appear from its own record.

10. The Oyer and Terminer and Quarter Sessions in the same county should keep distinct records. ·

11. Cathcart v. Commonwealth, 1 Wright 110; Dunn v. Commonwealth, 6 Barr 385; Taylor v. Commonwealth, 8 Wright 131, remarked on.

October 2d 1872. Before THOMPSON, C. J., READ, SHARSWOOD and WILLIAMS, JJ.

Writs of error and of certiorari to the Court of Quarter Sessions and Oyer and Terminer of *Armstrong county :* No. 144, 145, 146, 147, to October and November Term 1871.

These writs brought up the proceedings on the trial of Daniel A. Dougherty, for the murder of Joseph Stinel.

The record from the docket of the Court of Quarter Sessions showed that at the March Term 1871 of that court, No. 1, an indictment against Dougherty for the murder of Stinel was found a "true bill." The defendant being in prison, a habeas corpus was issued from the Supreme Court, and on the 9th of

[Dougherty v. Commonwealth.]

March he entered into recognisance with sureties before that court for his appearance "at the next Court of Oyer and Terminer, to be held, &c., on the 1st Monday of June next, to answer the indictment," &c.

On the 6th of June 1871, a motion of the defendant to quash the indictment, was on the same day overruled, and the defendant pleaded "not guilty," and on the 7th a jury (who are named in the record), found the defendant guilty of manslaughter. On the 10th of June, on motion of E. S. Golden, Esq., of counsel with the prisoner, ten days were allowed for filing reasons for a new trial. This was followed by this entry:—

"And now, to wit, 13th July 1871, Daniel A. Dougherty, the defendant, comes into court, and the court sentenced the said Daniel A. Dougherty to pay to the Commonwealth fifty dollars fine, and be imprisoned in the Western Penitentiary of Pennsylvania, in Allegheny City, at separate and solitary confinement at labor, according to law, for four years and three months, to compute from this day, and to pay the costs of prosecution, and be in custody till complied with. By the Court.

"Attest:                                    "J. G. PARR, Clerk."

On the 20th of July writs of error and certiorari to the Court of Quarter Sessions, and like writs to the Court of Oyer and Terminer were issued. The record then proceeds:—

"27th July 1871. The district attorney moves the court to certify this case into the Court of Oyer and Terminer, *nunc pro tunc*, as of 9th March 1871.

"Same day, objections filed by defendant's attorneys against making any change in the record.

"And now, to wit, 29th July 1871, on motion of district attorney, this indictment is hereby certified *nunc pro tunc*, as of 9th March 1871, from the Quarter Sessions into the Court of Oyer and Terminer, there to be heard in due course of law, the offence not being triable in the Court of Quarter Sessions.—PER CURIAM."

Annexed to the foregoing there was sent up with the record, what was certified by the presiding judge to be the original minutes of the Court of Oyer and Terminer, which had never been entered on any docket.

It was certified also by the president judge, that there is no separate docket of the Court of Oyer and Terminer in Armstrong county, and that the record of cases certified into that court is continued at the original entry in the docket of the Quarter Sessions. These minutes and the certificates did not appear on the paper-book, and as they are found at large in the opinion of the Supreme Court, as delivered by Judge Williams, they are not stated here.

[Dougherty v. Commonwealth.]

The defendant removed the record to the Supreme Court; the errors assigned were :—

As to the record of the Quarter Sessions :

1 and 3. The Court of Quarter Sessions assumed jurisdiction to try the indictment and sentence the defendant.

4. The Court of Quarter Sessions certified the record *nunc pro tunc* into the Court of Oyer and Terminer.

As to the record in the Court of Oyer and Terminer :

1 and 2. The Court of Oyer and Terminer tried and sentenced the defendant, no indictment having been found in that court, or certified from the Court of Quarter Sessions.

*J. Gilpin* and *E. S. Golden*, for plaintiff in error, cited, as to jurisdiction, Mills *v.* Commonwealth, 1 Harris 630 ; Collins *v.* Collins, 1 Wright 387 ; Act of March 31st 1860, §§ 31, 32, Pamph. L. 437, Purd. 255, pl. 31, 32.   As to amendment : Gardner *v.* Post, 7 Wright 19 ; Wright *v.* Hart, 8 Id. 454 ; Stout *v.* Stout, Id. 457 ; McManus *v.* Cassidy 16 P. F. Smith 260 ; Act of March 31st 1860, *supra*, §§ 11, 12, 13, 53 ; Purd. 251, 259, pl. 11, 12, 13, 53.   Presumptions will not be made in such cases in aid of the record : Dunn *v.* Commonwealth, 6 Barr 385.   When the record is made up it cannot be contradicted : Taylor *v.* Commonwealth, 8 Wright 131 ; Cathcart *v.* Commonwealth, 1 Id. 108 ; Roberts *v.* Orr, 6 P. F. Smith 181.

There was no argument for the Commonwealth.

The opinion of the court was delivered, January 9th 1872, by

WILLIAMS, J.—These writs bring up the records of the Court of Quarter Sessions and the Court of Oyer and Terminer of Armstrong county, showing the trial of the plaintiff in error for the murder of Joseph Stinel, of said county, on the 14th of October 1870 ; and his conviction of manslaughter, upon which he was sentenced to the payment of a fine of $50 to the Commonwealth, and to separate and solitary confinement at labor, in the Western Penitentiary, for four years and three months, to be computed from the date of the sentence.

It is not alleged that the prisoner did not have a fair and impartial trial, but the complaint is that he was not tried by a court having jurisdiction of the crime with which he was charged ; and if this be so, then his conviction and sentence cannot stand. What then are the facts as shown by the records ?   A bill of indictment, charging the prisoner with the murder of the said Joseph Stinel, was submitted to the grand jury, at No. 1, March Sessions 1871, of the Court of Quarter Sessions of said county, and was by them found a true bill and returned into said court on the 7th of March 1871.   Having been brought into the

[Dougherty *v.* Commonwealth.]

Supreme Court on process, the defendant, on the 9th of March 1871, entered into a recognisance with sureties conditioned for his appearance in the Court of Oyer and Terminer to be held at Kittanning, in said county, on the 1st Monday of June next thereafter, to answer the indictment, &c., and not to depart the court without leave. On the 6th of June 1871, his counsel moved the court to quash the indictment, and the same day the motion was overruled by the court; and the defendant being then arraigned, pleaded not guilty. On the 7th of June 1871, a jury being called, came, &c., twelve honest, lawful men, duly selected and sworn according to law, who respectively say that they find the defendant guilty of manslaughter. On the 10th of June 1871, the court entertained a motion for a new trial and granted leave to defendant's counsel to file reasons therefor within ten days thereafter. On the 13th of July 1871, the court sentenced the defendant to pay a fine, &c., and be imprisoned in the Western Penitentiary of Pennsylvania, in Allegheny City, at separate and solitary confinement at labor, according to law, for four years and three months, and to pay the costs of prosecution, &c. On the 27th of July 1871, the district attorney moved the court to certify this case into the Court of Oyer and Terminer, *nunc pro tunc*, as of the 9th of March 1871. The same day objections were filed by the defendant's attorneys against making any change in the record; and on the 29th of July 1871, on motion of the district attorney—so the record reads—this indictment is hereby certified *nunc pro tunc* as of 9th March 1871, from the Quarter Sessions into the Court of Oyer and Terminer, there to be heard in due course of law, the offence not being triable in the Court of Quarter Sessions. These are the material facts touching the trial of the prisoner, as shown by what appears to be the record of the Court of Quarter Sessions, at No. 1, March Sessions 1871, as certified and brought up with the writs in these cases. But it is alleged on behalf of the Commonwealth that the prisoner was in point of fact tried, convicted and sentenced in the Court of Oyer and Terminer of said county— and not in the Court of Quarter Sessions—and that all the entries subsequent to the 9th of March 1871, when the defendant gave bail for his appearance in the Court of Oyer and Terminer, constitute the record of the Court of Oyer and Terminer, with the exception of the order of the 29th July 1871, certifying the indictment from the Court of Quarter Sessions into the Court of Oyer and Terminer, as of the 9th of March 1871. But how can we separate the entries, and divide the record into three parts; and declare that the first and last portions constitute the proper record of the Court of Quarter Sessions, and the intermediate portion the record of the Court of Oyer and Terminer? The entries follow each other in chronological order, and they all appear to be made in the case of The Commonwealth *v.* Daniel A. Dougherty,

19 P. F. SMITH—19

[*Dougherty v.* Commonwealth.]

at No. 1, March Sessions 1871, of the Court of Quarter Sessions. The motion of the defendant's counsel, on the 6th of June 1871, to quash the indictment, is shown to have been made in the Court of Quarter Sessions, not only by what appears to be the record of that court, but by the paper filed in the case and annexed to the record, containing the motion made by the defendant's counsel, the ruling of the court thereon, and the bill of exception sealed thereto by the presiding judge. If then, the motion to quash the indictment was made and overruled in the Quarter Sessions, as shown by the record and bill of exception, how can it be presumed or intended from the entry which immediately follows, of the same date, that the defendant was arraigned and pleaded not guilty in the Court of Oyer and Terminer? Manifestly, if the record is to be our guide, he was arraigned in the same court in which the motion to quash the indictment was made by his counsel. So far then as appears by the record of the Court of Quarter Sessions, the defendant was arraigned, tried, convicted and sentenced there. And if so, the conviction and sentence are void for want of jurisdiction in the court to try the defendant for the crime with which he was charged. While the Quarter Sessions had jurisdiction and power, under the Act of the 31st of March 1860, by its grand jury, to find the indictment charging the defendant with murder, it had no jurisdiction or power to try and punish him for the crime. Exclusive jurisdiction and power to try and punish all persons charged with any murder, manslaughter or other homicide, is given to the Courts of Oyer and Terminer by the act; and, under its provisions, whenever any indictment is found in any Court of Quarter Sessions for these or any other crimes or offences not triable therein, it is the duty of the said court to certify the same into the Court of Oyer and Terminer next to be holden in such county, there to be heard and determined in due course of law. The Court of Quarter Sessions, therefore, had no jurisdiction or power to try and punish the defendant; and if, as appears by the record, he was tried, convicted and sentenced therein, the whole proceedings must be regarded as null and void.

But if what purports to be the record of the Court of Quarter Sessions, clearly appeared to be the record of the Court of Oyer and Terminer, it is so fatally defective that the conviction and sentence could not be allowed to stand. While the record shows that the defendant was arraigned, and pleaded not guilty, on the 6th of June 1871, it does not show that he was present in court the next day when the jury were called and sworn, nor when they rendered their verdict. It does not appear by the record that the defendant was present in court between the 6th of June 1871, when he was arraigned, and the 13th of July 1871, when he came into court and received his sentence. Nor can his presence be presumed. In capital felonies, it must appear by the record that

[Dougherty v. Commonwealth.]

the prisoner was present at the trial, verdict and passing of the sentence. It was so decided in Dunn v. The Commonwealth, 6 Barr 385; and the sentence there was reversed because it did not sufficiently appear by the record that the prisoner was present at the trial, particularly at the rendition of the verdict, nor when sentence was passed. Nor do the cases of Cathcart v. The Commonwealth, 1 Wright 110, and Taylor v. The Commonwealth, 8 Id. 131, establish a different rule. If, as said in the former case and quoted approvingly in the latter, there is a presumption in criminal as well as in civil cases that the proceedings were regular, and it is incumbent on the plaintiff in error to show by the record that errors were committed before we can interfere, it was not intended to assert, as the opinions in these cases clearly show, that where "the substantive parts of a proper record" are wanting that their existence can be supplied by the presumption that all things were rightly done. In neither of these cases was there any allegation that the prisoner was not present when the verdict was rendered, or when the sentence was passed. In the latter case it is said: "But taking the record as it stands we have the facts distinctly appearing of the arraignment in court of the prisoner; of his presence when the jury were selected and sworn, when the verdict was rendered, and when the sentence was pronounced. The presumptions spoken of and referred to in these cases are: that the jury were properly sworn, when there is nothing on the record indicating any irregularity; that the prisoner had counsel, when there is nothing on the record to show that he was deprived of the right; and that he might have polled the jury if he had chosen so to do, if the record shows that he was present when the verdict was rendered. These and the like presumptions may doubtless be made, but not such as would supply the substantive and material parts of a proper record." In Prine v. The Commonwealth, 6 Harris 104, Gibson, C. J., said: "Never has there heretofore been a prisoner tried for felony in his absence. No precedent can be found in which his presence is not a postulate of every part of the record. He is arraigned at the bar; he pleads in person at the bar; and if he is convicted, he is asked at the bar what he has to say why judgment shall not be pronounced against him. These things are matters of substance, and not peculiar to trials for murder; they belong to every trial for felony at the common law, because the mitigation of the punishment does not change the character of the crime." The record before us, as we have seen, does not show that the prisoner was present when the jury were sworn or when they rendered their verdict; and, though it shows his presence when the sentence was passed, it does not appear that he was asked if he had anything to say why judgment should not be pronounced against him. Whether then it be the record of the Court of Quarter Sessions, or of the Court

[Dougherty *v.* Commonwealth.]

of Oyer and Terminer, the conviction and sentence of the prisoner cannot be allowed to stand. If he was tried in the Quarter Sessions, the sentence is void for want of jurisdiction in that court to try and punish him for the crime with which he was charged. If he was tried in the Court of Oyer and Terminer, the sentence is erroneous because the record does not show that he was present ,when the jury were sworn and when the verdict was rendered, nor that he was asked if he had anything to say why judgment should not be pronounced against him.

But as the record purports and appears to be the record of the Court of Quarter Sessions, it must be so regarded and treated; and we now turn to the other record annexed to and sent up with the writs in these cases, and which purports to be the record of the Court of Oyer and Terminer, in the case of The Commonwealth against the prisoner, at No. 1, March Term 1871, and is certified by the presiding judge to be the original minutes of the Court of Oyer and Terminer in that case, which have never been spread on any docket. The record is in these words :—

"And now, to wit, 6th June 1871, half past 8 o'clock A. M., the court met. Present, &c. Defendant's counsel moves the court to quash the indictment, which was argued by the counsel. Half past 10 A. M., motion overruled by the court, and the prisoner being arraigned, at 11 o'clock A. M. commenced to call a jury. Three men were sworn to 12 o'clock, when the court adjourned to half past 2 o'clock P. M. And now, 2 o'clock and 30 minutes, the court met agreeably to adjournment, and proceeded to call the jury. And now, 4 o'clock P. M., the panel of jurors summoned being exhausted, the court award a writ of *tales circumstantibus*, and thereupon the sheriff, A. J. Montgomery, is ordered to call the said talesmen, which he proceeded to do, and worked to 6 o'clock, and only eight jurors sworn and paneled. And the court order the sheriff to summon fifty more tales jurors, and the court adjourned to half past 8 o'clock A. M., Wednesday, June 7th. And now, to wit, 7th June 1871, the court met agreeably to adjournment, and the sheriff returned thirty talesmen, and were all called and challenged for cause. 12 o'clock M., 7th June 1871, the court ordered a *venire* to the sheriff for twenty more men as talesmen, and adjourned to half past 1 o'clock P. M. Half past 1 o'clock P. M., 7th June 1871, the court met, all present, and proceeded to call the jury. 4 o'clock P. M., same day, jury filled and the case opened by D. Barclay. And now, 6 o'clock P. M., June 7th 1871, the court adjourned to Thursday the 8th inst., at half past 8 o'clock A. M. And now, to wit, Thursday, June 8th 1871, 8 o'clock and 30 minutes A. M., the court met, all present. And now, 12 M., the court adjourned to 2 o'clock P. M. And now, 2 o'clock P. M., the court met, and now, 6 o'clock P. M., the court adjourned to 8 o'clock and 30 minutes A. M. Friday

[Dougherty v. Commonwealth.]

morning. And now, to wit, 8 o'clock and 30 minutes, the court met, all present; 6 o'clock P. M., testimony closed on both sides. And now, 6 o'clock P. M., the court adjourned till 8 o'clock and 30 minutes past 8 o'clock A. M., June 10th 1871. And now, to wit, 10th June 1871, 8 o'clock 30 minutes A. M. the court met, Mr. Swartzwelder addressed the court, and E. S. Golden, Esq., the jury, followed by Governor Johnston. 12 o'clock M. the court adjourned to 1 o'clock and 15 minutes ; when the court met, Governor Johnston proceeded with his address to the jury. About 4 P. M. the jury retired, and were out about one hour, when they brought in a verdict of guilty of manslaughter, when the court adjourned to Tuesday, the 11th day of July, at 9 o'clock A. M."

Here the minutes of the trial end, and upon a separate paper annexed to the record is found the following :—

"And now, to wit, July 13th 1871, it is the sentence of the court that you, Daniel A. Dougherty, pay a fine of fifty dollars to the Commonwealth ; that you be imprisoned by separate and solitary confinement at labor, according to law, in the penitentiary of the Western District of Pennsylvania, in the county of Allegheny, for the term of four years and three months ; that you pay the costs of prosecution ; and you are hereby committed to the custody of the sheriff of Armstrong county for the purpose of having this sentence carried into execution.—By the Court."

These, then, are the original minutes of the Court of Oyer and Terminer touching the trial, conviction and sentence of the prisoner, and they speak for themselves. Do they, as suggested, contain the materials out of which a proper record can be made—such a record as will support the conviction and sentence of the prisoner ?

But before proceeding to consider this question, let us see if the Court of Oyer and Terminer had jurisdiction and power to try the indictment found against the prisoner in the Quarter Sessions. Under the Act of the 31st of March 1860, the Oyer and Terminer had exclusive jurisdiction and power to try and punish the crime with which he was charged ; and it had power to try the indictment found against the prisoner in the Quarter Sessions if certified by the said court according to law, but not otherwise. Did the Court of Quarter Sessions then certify the indictment into the Court of Oyer and Terminer, there to be heard, and determined in due course of law ? As we have already seen, the Court of Quarter Sessions, on the 29th July 1871, made an order, declaring that "this indictment is hereby certified nunc pro tunc, as of 9th March 1871, from the Quarter Sessions into the Court of Oyer and Terminer, there to be heard in due course of law." There can be no doubt of the power of the court to amend its record, as was done in this instance, by an order nunc pro tunc: Wilson v. The Commonwealth, 10 S. & R. 375 ; Rhoads v. The

Commonwealth, 3 Harris 277. In the case last cited, Gibson, C. J., said: "The power of the court to amend being established, the conclusiveness of the record, as amended, follows of course. Even were the amendment erroneous, the legality of it could not be inquired of collaterally; and not being under the Act of 1806, it could not be inquired of even directly on a writ of error." According to the legal effect of the amendment, then, the Court of Quarter Sessions ordered the indictment to be certified from that court into the Court of Oyer and Terminer, on the 9th of March 1871, there to be heard in due course of law. But was the order, as made and recorded, sufficient to give the Oyer and Terminer jurisdiction of the indictment without furnishing it with a certificate of the fact duly authenticated? Recording the order on its own records, was not certifying the indictment into the Court of Oyer and Terminer as required by the act. It could be certified only by transmitting a certificate of the order, duly attested; and without such certificate the Oyer and Terminer had no more power, as it seems to me, to try the indictment than it would have had if no such order had been made. If any certificate of the order was furnished to the Oyer and Terminer, it should have been filed of record, and the fact noted on the docket, so that the jurisdiction of the court would have appeared from its own record. But there is nothing on the record of the Oyer and Terminer, showing that the indictment was certified into that court, and judged by its own record it had no jurisdiction of the case. But if the order of the Court of Quarter Sessions, as entered on its own record, was sufficient to give the Court of Oyer and Terminer jurisdiction of the indictment under the act, it does not appear that the prisoner was tried for the crime charged therein, and the record is in other respects utterly defective. So far as appears from the record, the prisoner was tried without any indictment or plea. The names of the jurors by whom he was tried do not appear in the minutes, and only eight of them appear to have been sworn. The prisoner was present in court the day the trial commenced, but it does not appear from the record that he was present on any subsequent day of the trial, nor when the verdict of the jury was rendered. And it does not appear from the verdict as recorded, that the jury found *the defendant* guilty of manslaughter, or of any other crime; nor that he was asked if he had anything to say why judgment should not be pronounced against him. We look in vain among these "original minutes which have not been spread on any docket," for the materials of a proper record; no legal alchemy can extract its "substantive parts" from such a mass of dross. Taking both records singly or together, and they do not contain enough to sustain the sentence pronounced against the prisoner.

If, as we are informed by the certificate of the presiding judge,

[Dougherty v. Commonwealth.]

there is no separate docket of the Court of Oyer and Terminer in Armstrong county, and the record of cases certified into that court is continued at the original entry in the Quarter Sessions, it is time that separate dockets were procured in which the records of each court can be kept without blending them with the records of the other. How such a practice as has been allowed to grow up in these courts must beget inextricable confusion, doubt and uncertainty, is apparent from the records sent up with these writs. Each court is bound by law to keep a record of its own proceedings, but what kind of a record must that be which is so blended with the record of another court as to make it impossible to separate the one from the other ? There can be no excuse for a practice so vicious and obstructive to the right administration and true ends of justice. If the records in these cases had been properly kept, they would probably have shown that no error was committed in the trial and sentence of the prisoner.

And now, January 9th 1872, it is considered that the sentence be reversed, and that the prisoner, Daniel A. Dougherty, be required to enter into recognisance, with sufficient sureties, in the sum of five thousand dollars each conditioned for his appearance at the next term of the Court of Oyer and Terminer succeeding this order, to be held at Kittanning, in and for the county of Armstrong, to answer the indictment found against him for the murder of Joseph Stinel, and not to depart the court without leave: and upon so entering into recognisance with sureties as aforesaid, it is ordered that he be discharged from imprisonment.