# Commonwealth ex rel. Greevy *v.* Reifsteck.

*Criminal law—Manslaughter—Courts — Jurisdiction—Oyer and terminer—Quarter sessions—Indictment and trial in quarter sessions—Failure to certify case over—Appeals—Habeas corpus—Act of March 31, 1860.*

1. Habeas corpus cannot properly be made a substitute for an appeal.

2. There is nothing in article I, section 14, of the Constitution of Pennsylvania, which will prevent the legislature, when specifying in a statute "relating to penal proceedings and pleadings" (such as the Act of March 31, 1860, P. L. 428), that certain crimes referred to shall be tried in one, and others in the other, of two named criminal courts, from also providing that a defendant, properly indicted for one of those crimes, if he wishes to object because he

was tried in the wrong one of said courts, must make his objection prior to affirmance of its judgment by the court of last resort, or be deemed to have waived it.

3. Under section 61 of the Act of 1860, supra, it is too late for a defendant, after affirmance of the sentence on appeal, to object that he was tried, convicted and sentenced in the wrong one of said courts.

4. Such an objection is at most an irregularity, which will not be considered on habeas corpus, after the sentence has been affirmed.

5. In such case even if the Supreme Court sustained the relator's objection, it should not discharge him. All it should do would be to vacate the sentence, and give leave to the court below to certify the record into the oyer and terminer nunc pro tunc, and thereafter sentence the relator in the latter court.

6. On appeal from the Superior Court, the Supreme Court has general jurisdiction over all convictions of crime, and hence its affirmance of the judgment and sentence of the quarter sessions, cannot be made the subject of collateral attack by habeas corpus.

7. Not decided whether habeas corpus is available to one convicted of crime, unless the record shows that he had committed no criminal offense, had been pardoned, had been committed to the wrong institution, or had served the maximum sentence for his crime.

Petition for writ of habeas corpus submitted: Miscellaneous Docket of Supreme Court No. 4, No. 24.

*R. A. Henderson,* with him *J. F. Sullivan, Morgan J. Sheedy* and *James Gay Gordon,* for petitioner.

*Marion D. Patterson,* District Attorney, contra.

PER CURIAM, October 24, 1921:

In the Court of Oyer and Terminer and General Jail Delivery of Blair County, relator was indicted, tried for and acquitted of the murder of one Edward Steckroth. Subsequently he was indicted, in the court of quarter sessions of the peace of that county, for involuntary manslaughter in killing the same person. "The trial was had in October, 1919, in a court of oyer and terminer as well as the court of quarter sessions. Sixty (60) jurors were

empanelled and present in court. The judge of the oyer
and terminer court presided and the clerk of the oyer
and terminer court was present performing his duties.
The defendant had the right to twenty (20) peremptory
challenges of jurors. The court did not limit him in
making challenges. There was no exception or objection
to the ruling of the court on the calling of jurors or the
manner of conducting the trial. There was nothing
lacking except the formality of certifying the same on
the record from the quarter sessions to the oyer and
terminer."

The accused was convicted; he made a motion in ar-
rest of judgment, which was overruled, and, having been
sentenced, appealed to the Superior Court, which re-
versed the judgment and discharged him without day.
An appeal was duly allowed to this court, which heard
argument and entered the following judgment (271 Pa.
95) : "The judgment of the Superior Court is reversed,
the judgment and sentence of the Court of Quarter Ses-
sions of the Peace of Blair County is reinstated and af-
firmed, and the record is remitted to the last named
court with directions to take all necessary steps to carry
the sentence into effect." Up to this stage, relator had
not contended he had not, as a matter of fact, been tried
by the court of oyer and terminer, nor had he raised any
objection to the jurisdiction of the quarter sessions.

Having been taken into custody, in obedience to our
order, he then applied to the court of common pleas of
the same county for a writ of habeas corpus, alleging he
was improperly sentenced, because section 31 of the Act
of March 31, 1860, P. L. 428, 437, provides "The courts
of oyer and terminer and general jail delivery......shall
have exclusive jurisdiction and power to try and punish
......all persons charged with any murder, man-
slaughter or other homicide"; but the application was
dismissed, the court stating it "should not attempt to
destroy the Supreme Court's decree." Instead of appeal-
ing from the order just referred to, relator made the pres-

ent application for a new writ of habeas corpus, and, in pursuance of the practice approved in Passmore Williamson's Case, 26 Pa. 9, and constantly followed since, we granted a rule to show cause why it should not be allowed, admitting him to bail pending a decision of the question. As a habeas corpus cannot properly be made a substitute for an appeal (In re Belt, 159 U. S. 95; Com. v. Lecky, 1 Watts 66; Com. v. Seechrist, 27 Pa. Superior Ct. 423; 12 R. C. L. 1192), we might well dismiss the application for this reason alone; but, despite the technical character of the complaint, we naturally hesitate to so rule in cases of this character, and shall not do so in the present instance.

If the course of the proceedings had deprived the relator of any right or privilege, another question would arise; but this is not even alleged. The same section (31) upon which he relies, further provides: "The courts of oyer and terminer and general jail delivery shall have power......to try indictments found in the quarter sessions, and duly certified according to law," and section 32 adds: "Whenever any indictment shall be found in any court of quarter sessions, for any crime or offense not triable therein, it shall be the duty of the said court to certify the same into the court of oyer and terminer next to be holden in said county, there to be heard and determined in due course of law." It follows that no legal objection can be made to the indictment, and, as relator was in fact tried in a court of oyer and terminer, the only defect in the record is a failure to have the indictment certified to that court. Had this been done, however, it would have been of no benefit to him, for the same judge and jurors would have tried him, the sentence would have been the same and he would have had the same right of appeal to the same court. Had he made this objection during the trial, on the motion in arrest of judgment, or even after he had appealed from the sentence, the indictment could have been certified to the oyer and terminer nunc pro tunc, and of this he would

have had no legal right to complain: Brown v. Com., 78
Pa. 122; Donaldson v. Com., 95 Pa. 21; McMeen v.
Com., 114 Pa. 300. That it was not certified is at most
an irregularity, which should not be considered on ha-
beas corpus. This was at least broadly hinted in Com.
ex rel. v. Francies, 53 Pa. Superior Ct. 278, 292, where
the defendant was tried and sentenced in the quarter
sessions for an offense which, as here, was properly tri-
able only in the oyer and terminer, in that case an ad-
ditional defect being that there was no indictment what-
ever, despite the requirement of the Act of April 15,
1907, P. L. 62. President Judge RICE, speaking for the
court, said: "The objection that the case was not certi-
fied into the oyer and terminer may be regarded as tech-
nical, but the objection that no court had power to im-
pose the sentence, except upon an indictment,......is
not technical but substantial." It would be a strange
judicial system which provided that an objection which
would have been unsubstantial if made in the lower
court, becomes substantial, indeed unanswerable, if made
after the court of last resort has affirmed the judgment.
Happily our system does not so require.

Moreover the legislature also provided in section 61
of the same act, (P. L. 444-5) that "Upon the affirmance
by the Supreme Court of the judgment in any case, the
same shall be enforced pursuant to the directions of the
judgment so affirmed." This is more than a mere state-
ment of what would have necessarily resulted in any
event; it is a legislative direction that an objection
such as this must be made, if at all, before affirmance of
the judgment. It is true, relator's right to a habeas cor-
pus is recognized in article I, section 14, of the Constitu-
tion of the Commonwealth, and hence he cannot be
wholly deprived of it, or the right be so hampered as to
amount to a practical deprivation; but this does not pre-
vent the legislature, when specifying, in a statute "re-
lating to penal proceedings and pleadings," that certain
of the crimes referred to therein shall be tried in one and

others in the other of two named criminal courts, from also providing that a defendant, properly indicted for one of these crimes, if he wishes to object because he was tried in the wrong one of said courts, to make his objection at some time prior to affirmance of its judgment by the court of last resort, or else he will be deemed to have waived it, as in effect has been provided here.

Even if we sustained relator's contention, we could not discharge him. As already shown, he was properly indicted in the quarter sessions, and, since this proceeding has nothing to do with the trial, which we have held was conducted without error, the utmost we could do would be to vacate the sentence, and give leave to the court below to certify the record into the oyer and terminer nunc pro tunc and thereafter resentence relator in the latter court. This also would result in no benefit to him, and, for the reasons above stated, it is too late now to ask it, especially since, on appeal from the Superior Court, this court has general jurisdiction over all convictions of crime, and hence our affirmance of the judgment and sentence of the quarter sessions cannot be made the subject of collateral attack by habeas corpus (Ex Parte Watkins, 3 Peters 193) as this attack is: Com. v. Keeper of the Jail of Phila., 26 Pa. 279. "It would be very disorderly for defendants to hold back an objection to the jurisdiction of the court, and then raise it by rebellion against the public authorities, when the writ of the Commonwealth came to be 'executed; and habeas corpus would be a most disorderly writ, if it could be thus used in contempt of authority": Passmore Williamson's Case, 26 Pa. 9, 29. We cannot permit it to be so used.

We need only add, it is extremely doubtful whether habeas corpus is available to one convicted of crime, unless the record shows he had committed no criminal offense, had been pardoned, had been committed to the wrong institution, or had served the maximum sentence for his crime (Passmore Williamson's Case, 26 Pa. 9, 24; Williamson v. Lewis, 39 Pa. 9; Ex Parte Watkins, 3

Peters 193, 202; Graham's Petition, 19 Phila. 558, per
FELL, J.); but, in view of what has been said, it is un-
necessary to determine this question now.

The rule to show cause is discharged, the petition for
a writ of habeas corpus is dismissed, and the relator is
remanded until the sentence imposed upon him has been
fully complied with or he has been discharged from lia-
bility therefor.