## Commonwealth *v.* Torr, Appellant.

Argued September 28, 1933.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*John L. DuBois,* for appellant.

*Arthur M. Eastburn,* District Attorney, for appellee.

OPINION BY PARKER, J., December 16, 1933:

An indictment (Appeal No. 347) was found against the defendant in the court of oyer and terminer charging sodomy, assault and battery with intent to commit sodomy, solicitation to commit sodomy, and as-

sault and battery, and two indictments (Appeals No. 353 and 354) were returned in the court of quarter sessions charging misdemeanors, assault and battery with intent to commit sodomy, solicitation to commit sodomy, and assault and battery. The offenses were alleged to have been directed against different boys in each of the three indictments. The defendant was found guilty on all the counts in the indictment in the court of oyer and terminer and sentence was imposed. He was found guilty on all but one count in the indictments in the court of quarter sessions and sentence was suspended in both of these cases. Separate appeals having been taken in each case, they were heard together and will be disposed of in one opinion.

The defendant was tried on all three indictments before one jury. He now urges that the lower court erred "in trying the quarter sessions bills in oyer and terminer together with oyer and terminer bill, without certification of the quarter sessions bills" to the court of oyer and terminer. It will be observed that sentence was suspended in the quarter sessions cases and that there was, therefore, not any judgment in those cases: Com. v. Jung, 86 Pa. Superior Ct. 569, 571. Until he is sentenced there is no judgment to support his appeal: Com. v. Lipschutz, 89 Pa. Superior Ct. 142, 144; Com. v. Cauffiel, 97 Pa. Superior Ct. 202, 205. Appellant insists, however, that he was prejudiced in the trial of the felony by the trial of the quarter sessions bills with the oyer and terminer bill without proper certification of the quarter sessions bills to oyer and terminer. Considering the contention of defendant on its merits, the result is not more favorable to him. No objection was made by the defendant at the time to the trial of the three indictments by one jury, and it is now too late to raise such question: Com. v. Valotta, 279 Pa. 84, 88, 123 A. 681. Objection to the fact that there had been no formal certification of the quarter sessions cases to the court of

oyer and terminer was not raised until after this appeal was taken. By Section 31 of the Act of March 31, 1860, P. L. 427, the court of oyer and terminer has not only exclusive jurisdiction to try certain enumerated crimes, including that of sodomy, but also the power "to try indictments found in the sessions, and certified by the said court, according to law": Hackett v. Com., 15 Pa. 95, 100. Had the defendant made objection during the trial, or even after trial, the indictment could have been certified to the oyer and terminer nunc pro tunc, and of this he would have had no legal right to complain: Com. v. Reifsteck, 271 Pa. 441, 444, 115 A. 130; Brown v. Com., 78 Pa. 122; Donaldson v. Com., 95 Pa. 21; McMeen v. Com., 114 Pa. 300, 9 A. 878; Dougherty v. Com., 69 Pa. 286, 289. In the case of Com. v. Reifsteck, supra, it was held that where one is properly indicted in the court of quarter sessions but tried in oyer and terminer without a certification, he is not entitled to relief in a habeas corpus proceeding, and that in any event the defendant would not be entitled to a discharge, but the utmost which the appellate court would do would be to vacate the sentence and give leave to the court below to certify the record into the court of oyer and terminer nunc pro tunc and thereafter sentence the defendant in the latter court. In any event, just such situations are provided for by the Act of May 10, 1927, P. L. 879 (17 PS 392), as follows: "Whenever any indictment, other than an indictment for murder, shall be found in any court of oyer and terminer, or quarter sessions of the peace, of the county where the offense was committed, for any crime not triable under existing law in the court where found, the court may nevertheless proceed with the trial of the accused in the court in which such indictment was found, unless the court shall, upon motion of the accused, certify the indictment to the proper court for trial. No motion made after verdict, or writ of error or appeal, based

on a failure to indict or try a defendant or defendants in the proper court, as provided by existing law, shall be granted or sustained, unless it be affirmatively shown that the accused was in fact prejudiced in his defense upon the merits and a failure of justice has resulted.'' There has not been suggested to us, nor by our individual efforts have we been able to discover, any respect in which the defendant was prejudiced in his defense upon the merits or that a failure of justice has resulted by reason of the fact that there was not a formal certification to the court of oyer and terminer. The record discloses that the defendant was afforded the number of challenges to which he was entitled in an oyer and terminer case. There is not any merit in this highly technical defense.

Our attention has been called to the fact that a separate docket is not maintained in Bucks County for the court of oyer and terminer, but that quarter sessions and oyer and terminer cases are recorded in one docket showing in the particular case the court in which the proceeding is had. The Supreme Court, in the case of Dougherty v. Com., supra, called attention to the evil of such practice. It was there said (pp. 294, 295): ''If, as we are informed by the certificate of the presiding judge, there is no separate docket of the court of oyer and terminer in Armstrong County, and the record of cases certified into that court is continued at the original entry in the quarter sessions, it is time that separate dockets were procured in which the records of each court can be kept without blending them with the records of the other. How such a practice as has been allowed to grow up in these courts must beget inextricable confusion, doubt and uncertainty, is apparent from the records sent up with these writs. Each court is bound by law to keep a record of its own proceedings, but what kind of a record must that be which is so blended with the record of another court as to make it im-

possible to separate the one from the other? There can be no excuse for a practice so vicious and obstructive to the right administration and true ends of justice." The records as kept in these cases did not intermingle the particular cases, but the causes arising in the different courts were carried in one docket. This is a bad practice and should be corrected at once, but it does not affect the merits of the instant case.

Complaint is made of the refusal of the trial court to permit a physical examination of the defendant in open court. The assignment of error in question is based upon the following excerpt from the record: "I desire to make a motion and have it placed upon the record, that the defendant undergo a physical examination in the presence of Your Honor, the district attorney, and the members of the jury, and also in the presence of the defendant's medical witness." The court refused the motion and allowed the defendant an exception. Where an external quality or condition of a material object is in issue or relevant to the issue, the inspection of the thing itself is proper: 2 Wigmore on Evidence 1151; and generally speaking that which has rational probative value is relevant; but it does not follow that every item of evidence of however slight probative value must be received, for if such were the case the time consumed would be prohibitive and many other auxiliary rules of proof might be violated. The motion failed to disclose any reason for the rather unusual suggestion that the defendant should be disrobed in court. Insofar as we can gather from the arguments and the context, it was desired to have the experts point out some peculiarities in the physical characteristics of the defendant from which the expert deduced the conclusion that the defendant was a sexual pervert and possessed an "irresistible impulse" to commit sodomy. The expert was permitted to call attention to such characteristics which

for the most part could be seen through the clothing, and the Commonwealth made no denial of the physical characteristics in question. In any event, as we shall later endeavor to show, "irresistible impulse" as here understood is not a defense in a criminal case in Pennsylvania.

The defense set up at the trial was that of insanity and "irresistible impulse" to commit sodomy. Of the defendant's experts, one physician gave evidence that he was not sane, while the other three described him as a sexual pervert. The trial judge, in a fair and impartial manner, submitted to the jury the question of the defendant's sanity but instructed them that "irresistible impulse" was not of itself a defense to a criminal act. The thirteenth to eighteenth assignments of error all concern the efforts of the defense to set up "irresistible impulse" to commit sodomy as a defense in this action. There was no opportunity here for a confusion of terms. The trial court did not exclude any testimony tending to show that the defendant was insane or that by reason of such insanity his will power had been destroyed and he was unable to act intelligently. The court properly excluded the defense of "irresistible impulse." As was said by Mr. Justice SCHAFFER in the case of Com. v. Cavalier, 284 Pa. 311, 320, 131 A. 229: "To have done so would have been to have overturned the law on the subject of the responsibility for crime as it has existed in this Commonwealth at least from Com. v. Mosler, 4 Pa. 264, down to the present day." The court was fully justified in saying to the jury in this case that the defense of "irresistible impulse" is one which our law does not recognize: Com. v. Schroeder, 302 Pa. 1, 152 A. 835.

The court also properly excluded certain evidence taken in a proceeding to determine the sanity of the defendant. Just what this proceeding was does not appear from the record as it is not printed, but we

assume that it was a proceeding under the Mental Health Act wherein the commission determined that the defendant was sane but in need of hospitalization. The court properly excluded evidence offered in that proceeding which was pure hearsay.

The appeals at Nos. 353 and 354, October Term, 1933, are quashed.

The judgment at No. 347, October Term, 1933, is affirmed.