## Brown *versus* The Commonwealth.

1. An indictment was found in the Quarter Sessions, but entitled as in the Oyer and Terminer, where it was tried. *Held,* that the caption might be amended after trial, conviction, sentence and writ of error, but before the record had been returned.

2. The indictment was not certified into the Oyer and Terminer, *Held* that after trial, conviction, sentence and writ of error, it might be certified *nunc pro tunc* into the Oyer and Terminer.

[Brown v. Commonwealth.]

3. Where a lower court has power of amendment and exercises it properly the Supreme Court will not inquire into the state of the record before the return of the writ of error, but will look only at its condition when returned.

4. On a question of prisoner's insanity the court charged "if he had power of mind enough to be conscious of what he was doing at the time, then he was responsible to the law for that act." *Held*, not error.

5. Ortwein v. Commonwealth, 26 P. F. Smith 414, followed.

March 12th 1875. Before AGNEW, C. J., SHARSWOOD, MERCER, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Oyer and Terminer of *Bradford county*: Of January Term 1875, No. 132.

Albert Brown was indicted at the September Term 1874, of the Court of Quarter Sessions of Bradford county, for the murder of Cora Greenleaf. The indictment contained two counts: one, in the ordinary form, for the murder of the deceased, and the other, for her murder in perpetrating a rape upon her.

The caption of the indictment entitled it in the Court of Oyer and Terminer. The venire for the grand jury, issued out of the Quarter Sessions; the indictment was not certified into the Court of Oyer and Terminer before the trial. The records of all the proceedings on the trial, were contained in the Quarter Sessions docket.

The cause was tried before Morrow, P. J., and his associates, in the Oyer and Terminer. The evidence was that the prisoner had ravished the deceased, and afterwards cut her throat. The defence was that the prisoner was insane, and evidence was given in support of it.

On the defence of insanity, the court charged: * * *

"Now with regard to the law upon that subject, we shall not undertake to enter upon a discussion of this subject in general, but lay down to you only such few rules as we think will enable you to determine the question raised by this defence. 1st. The law presumes every man to be sane; that is the presumption of law. It also presumes that every man possesses a sufficient degree of reason to be responsible for his crimes, and that presumption continues until the contrary be proven. To establish a defence upon the ground of insanity it must be clearly proved that at the time of the committing the act, the prisoner was laboring under such a defect of reason as not to know the nature and quality of the act he was doing; or if he did it, that he did not know he was doing what was wrong. This is the general rule, but we will more particularly say that 'when the reason is dethroned, when a man has not power to distinguish right from wrong, or lacks power to adhere to the right and abstain from the wrong, he is not accountable to criminal law.' Or if the prisoner was actuated by an irresistable inclination to kill, 'had murder in his heart,' and was utterly unable to control his will or subjugate his intellect, and was

[Brown *v.* Commonwealth.]

not actuated by a wicked purpose, or intent to indulge in this depraved propensity to have sexual connection with the deceased, was not actuated by anger or revenge or kindred passions, he is entitled to be acquitted; provided the jury believe that the state of mind, now referred to, has been proven to have existed by satisfactory evidence, at least by preponderating evidence.

"The presumption of law is that he is sane; that he is responsible for any act he may do. The burden then is upon him to show that he was not responsible, by reason of inability to commit crime, and in connection with this, we cannot say, as a test, that because a man is of weak mind, that therefore he is excused from the commission of crime; such is not the law. If he has sufficient strength of mind to form a purpose and intent, to know and distinguish between right and wrong, to know the act is wrong, and power to abstain from it, if he had that power, although his mind was as weak as testified to by Dr. Shultz, and was not compelled, as it were, by some power outside of himself to commit the act, then he is responsible.

"It makes no difference whether the evidence indicating insanity is brought out by the testimony on the part of the Commonwealth, or proved directly on the part of the prisoner; but one thing is certain: it must be proved in some way, or at least the weight of evidence that such is the fact must preponderate. * * * The prisoner must here set up positive, actual proof of the existence of insanity upon his part, of an irresistible power controlling him. * * * Now, under all the evidence in the case with regard to the cause of this crime, the time and manner when it was committed, and everything as shown by the evidence, does all this establish the fact that this man had not power to control himself? Is it satisfactory and preponderating evidence to establish the fact that at the time he committed this act, it was not his act but the act of some power controlling him, an irresistible power? If so, then you should acquit him. It would be monstrous to convict a man of any crime he is not capable of committing, and who does not know right from wrong, and has no moral sense or convictions about it. But, on the other hand, if this evidence does not preponderate and satisfy you that at the time he committed this act he was insane and unable himself to do it, it is clearly your duty to convict him of such crime as in your judgment, under the law, he has committed. The presumption of law is that every person charged with a crime is innocent until he is proven guilty. In this case, the prisoner admits the fact that he committed the crime, and the only question, therefore, for the jury to determine is, was the prisoner capable of committing a crime? Did he know the act was wrong? Did he know the nature and character of it? Was he conscious of what he did at the time? If he was, although he is a person of weak mind, although he is addicted to bad vices,

[Brown v. Commonwealth.]

although he is afflicted with disease, [yet if he had the power of mind enough to be conscious of what he was doing at the time, then he is responsible to the law for that act."] * * *

December 11th, the jury found the prisoner guilty of murder in the first degree. After overruling a motion in arrest of judgment, the court on the 16th of December 1874, pronounced sentence of death on him. On the 22d of December, the clerk of the Court of Oyer and Terminer transmitted an exemplification of the record to the governor. On the 25th of January 1875, a writ of error was filed and its service accepted by the district attorney. On the 10th of February 1875, the Court of Quarter Sessions granted leave to the district attorney to amend the caption of the indictment *nunc pro tunc* as of September 8th 1874, by striking out "Oyer and Terminer" and inserting "Quarter Sessions," and also to amend the record by striking out all that part of the record made subsequently to return of the bill a "true bill," as having been erroneously made by the clerk by transcribing it into the record of the Quarter Sessions. On the same day, the court directed that the case be certified, *nunc pro tunc* as of September 8th 1874, from the Quarter Sessions into the Oyer and Terminer; on the same day, the case was certified according to the order into the Oyer and Terminer; and the Court of Oyer and Terminer ordered that the indictment as certified from the Quarter Sessions, be filed *nunc pro tunc* as of September 8th 1874, in the Court of Oyer and Terminer; it was accordingly filed as of that day.

There was a large number of specifications of error. Those considered by the Supreme Court related to the amendments of the record and to the portions of the charge on the question of the burden of proof of insanity.

*H. W. Patrick* (with whom was *J. F. Sanderson*), for plaintiff in error: as to the finding of the indictment in the Quarter Sessions, cited Act of March 31st 1860, sect. 32, Pamph. L. 437; 1 Br. Purd. 382, pl. 35. As to trying in Oyer and Terminer an indictment found in the Quarter Sessions and not certified to the Oyer and Terminer, sect. 21, pl. 34. As to the charge of the court on the question of insanity, they cited State v. Bartlett, 43 N. H. 228; Hopps v. People, 31 Ill. 385; Chase v. People, 40 Id. 224; Polk v. People, 19 Ind. 170; Stevens v. State, 31 Id. 485; People v. Garbat, 17 Mich. 9; People v. M'Cann, 16 New York 58; Smith v. Commonwealth, 1 Duvall 224; Ochletree v. Hale, 28 Id. 693.

*H. N. Williams* (with whom was *J. B. Reeve*, District Attorney), for Commonwealth, defendant in error.—The caption is no part of the indictment: Whart. Crim. Law, sects. 219, 220; 4

[Brown *v.* Commonwealth.]

Comyn's Dig. 672, note (h); Pennsylvania *v.* Bell, Addison 156; Comm'th *v.* Bechtell, 1 Amer. L. J. 414. Amendments will be made when justice requires. Steffy *v.* Carpenter, 1 Wright 41. Records made in a wrong case may be transferred to the proper case: Sweeney *v.* Delany, 1 Barr 320. A fact not on the record which ought to appear, can be put on *nunc pro tunc*: Breden *v.* Gilliland, 17 P. F. Smith 34. There is no difference as to amendments between penal and other actions: Griffith *v.* Eshleman, 4 Watts 55; Megargell *v.* Hazleton Coal Co., 8 W. & S. 347. The court may amend after the term: Rhoads *v.* Comm'th, 3 Harris 276; Bailey *v.* Musgrave, 2 S. & R. 219; and after error brought: Ordroneaux *v.* Prady, 6 S. & R. 511; Murray *v.* Cooper, Id. 126; De Haas *v.* Bunn, 2 Barr 335; Sheppard's Case, 27 P. F. Smith 295; Dougherty *v.* Comm'th, 19 Id. 286. As to proof of insanity: Comm'th *v.* Mosler, 4 Barr 264; Ortwein *v.* Commonwealth, 26 P. F. Smith 414. Every unlawful killing is presumed to be murder, and the burden is upon the prisoner to rebut the presumption, whether the defence be insanity or anything else: O' Mara *v.* Comm'th, 25 P. F. Smith 424; Commonwealth *v.* Dunn, 8 Id. 9; Pennsylvania *v.* Bell, Addison 156.

Chief Justice AGNEW delivered the opinion the court, May 10th 1875.

This case has been presented with much ability by the counsel of the prisoner, who have spared no labor or pains in performing their whole duty to a client whom they were appointed to defend, without hope of reward, other than that which attends a consciousness of duty well performed. The prisoner, miserable in severable senses, has been convicted, on a full and fair trial, of a most revolting crime; yet, owing to the mixed system of criminal proceedings in this state, and the want of skill, or of care, in the double office filled by a single clerk, we are perplexed with errors of procedure which under a single system of criminal jurisdiction, and more skill in the office, would not occur. We are relieved partially in the consideration of the assignments of error, by the full and complete record of the trial in the Oyer and Terminer, made out probably under the superintendence of the presiding judge. The rule of this court being to confine itself strictly to the record proper, and to affirm, if no error affecting the rights or interests of the prisoner appear therein, we are saved from considering the formal errors assigned, excepting two; Cathcart *v.* Commonwealth, 1 Wright 108; Girts *v.* Commonwealth, 10 Harris 351.

The first is as to the amendment of the caption of the indictment which was entitled as in the Oyer and Terminer, but was amended after trial, conviction and sentence, so as to be entitled, as in the

[Brown v. Commonwealth.]

Court of Quarter Sessions. It would be a shame if this were not amendable, and we think there was sufficient before the court to amend by. No venire for grand jurors had issued out of the Court of Oyer and Terminer, and the indictment was, in fact, found in the Court of Quarter Sessions, from which the venire had issued, so that the mistake in the caption was obvious, and its amendment affected no real interest or right of the prisoner. The Court of Quarter Sessions having jurisdiction to find the indictment and send it into the Court of Oyer and Terminer for trial, the error in the caption was purely technical, and the amendment did the prisoner no harm.

The next assignment of error is more formidable, yet we think it fell within the power of amendment. The indictment found in the Quarter Sessions had not been formally certified into the Court of Oyer and Terminer at the time of trial. Afterwards, under a *nunc pro tunc* order, it was regularly certified in due form into the Court of Oyer and Terminer, and so appears on the record of that court. We think, under the authority of Dougherty v. The Commonwealth, 19 P. F. Smith 293, the amendment *nunc pro tunc* was properly allowed. The prisoner was tried before judges having jurisdiction of his crime, by a jury duly selected and empannelled, on an indictment found by a grand jury having power to inquire of the offence, in a court having jurisdiction of the inquiry; and the indictment being, in fact, sent into and in possession of the Oyer and Terminer, and sufficient and regular in charging the offence. Both courts are held by the same judges, and a single clerk fills the office of clerk in each. Why, then, should it be deemed a stretch of power to make the amendment, even after error brought? Every substantial right of the prisoner was observed, and nothing but the formality of the certificate was wanting. The lodging of a writ of error is no test in such a case, but it is the power of the court, and the propriety of making the amendment. Where the court has the power, and exercises it properly, this court will not inquire into the state of the record before the return of the writ, but will look only at its condition, when returned in obedience to the writ. If, then, it appears to be regular, its previous condition will be disregarded. Our province is not to look for errors merely to reverse, but to look for merits in the cause of reversal; and when we find the court below has done no more than it could rightly do, and when what it did infringes no right or substantial interest of the prisoner, we ought not to send back for a re-trial a cause fully, fairly and justly determined. We think this assignment of error, when examined, is found to be without substantial merit. The day of mere technicality is past, and courts should look more at substantial justice than artificial nicety; Commonwealth v. Keenan, 17 P. F. Smith 206; Girts v. Commonwealth, 10 Harris 351.

[Brown *v.* Commonwealth.]

All the errors assigned to the charge relate to the burden of proof of insanity, the judge holding that the crime being admitted, the burthen lay upon the prisoner to establish his defence of insanity, or his want of moral power to resist the impulse to commit the crime, by satisfactory, or, at least, by preponderating evidence. The case of Ortwein *v.* The Commonwealth, 26 P. F. Smith 414, decided in January last by this court, was not known to the counsel at the time of trial. That case decides the question, and we shall only refer to it.

One error upon the defence of insanity is assigned to the following language of the court: " If he (the prisoner) had power of mind enough to be conscious of *what* he was doing at the time, then he was responsible to the law for that act." It is contended this language was incorrect, and was liable to mislead the jury, because the prisoner might be conscious of what act he was doing, and yet, in consequence of mental disability or disease, be incapable of refraining from its commission. But the charge has a plain English meaning, referring to the nature of the act, and when taken in connection with other parts of the charge, this portion is not susceptible of misconstruction. All the judge said referred plainly, not to the mere act, but to the prisoner's consciousness of what he did as a crime. The phrase, " conscious of what he was doing," is idiomatic, and is understood to mean the real nature and true character of the act as a crime, and not to the mere act itself. As used by the judge in connection with what else he said, it was not contradictory or misleading. A memorable instance of this idiomatic use of the word *what* is found in the language of our Saviour on the cross, when he said, " Father, forgive them ; for they *know not what they* do !" Clearly, the Jews knew well that they were crucifying Jesus, but their darkened minds were unconscious of the great crime they were committing.

We find no substantial error in the record for which the sentence of the court should be reversed. The judgment and sentence of the Court of Oyer and Terminer are therefore affirmed, and it is ordered that the record be remitted to the said court for execution of the sentence according to law.