## Moock et al. *v.* Conrad et al., Appellants.

[Marked to be reported.]

*Elections—Rule to quash petition—Appeals.*

No appeal lies from an order of the court of quarter sessions, refusing to quash a petition in a contested election case.

The quashing or refusing to quash a writ or other process by which a defendant is simply brought into court to answer, rests in the sound discretion of the court out of which the process issues, and the action of the court upon such a motion, being the exercise of a judicial discretion, is not ordinarily reviewable. Per MR. JUSTICE WILLIAMS.

*Certiorari—Election law.*

An order refusing to quash an election petition, where the record discloses only the petition, an order to answer, and a motion to quash, which had been refused, cannot be reviewed on certiorari.

*Contested election—Several candidates—Petition—Practice.*

Where several candidates are voted on the same ballot or ticket, and the contestants of the election allege fraud or mistake, calculated to affect the entire ticket, and to destroy the returns as to each one of the set returned as elected, it is not necessary for the contestants to file as many copies of their petition as there are persons upon the ticket returned elected.

If there are reasons why any of the respondents would suffer from being joined with the others in one petition, such respondents, when they come to answer, may set out these reasons, and so sever in their answers and ask the court to allow them to sever in their trials.

*Contested election—Affidavit—Act of May 19, 1874.*

It seems that, on a petition in an election contest, an affidavit which avers that the statements of the petition are true to the best of the knowledge and belief of the affiants, is sufficient under the act of May 19, 1874, P. L. 208.

Argued May 2, 1893. Appeal, No. 51, July T., 1893, by defendants, George W. Conrad et al., from order of Q. S. Phila. Co., March T., 1893, No. 1, discharging rule to show cause why an election petition should not be quashed. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ.

Rule to quash election petition.

The facts appear by the opinion of the Supreme Court.

The petition in places does not distinguish between petitioners who are contestants and those who are not, calling them all contestants.

The following opinion was filed by FINLETTER, P. J.:

" The reasons in support of this motion are as follows:

" 1. Because the offices contested being four separate and distinct offices, there should have been filed four separate and distinct petitions, each signed by at least twenty-five qualified electors, who voted at the election contested, and each petition setting forth the name of the person whose title to the office is contested.

" 2. Because the four offices being contested, being four separate and distinct offices, the petition should have been signed by at least one hundred qualified electors who voted at the election contested, and should have been verified by at least twenty of the petitioners.

" 3. The affidavit to said petition is not in conformity with the provisions of the act of general assembly approved May 19, 1874, relating to contested elections in this commonwealth.

" A motion of this kind is analogous to a demurrer in other proceedings. As the allegations of the petition are sworn to and not denied, we must presume, for the purposes of this investigation, that they are true. To grant the motion is to end the proceedings and close the doors against the investigation of the most dangerous and far-reaching of election frauds. The responsibility should not be assumed by a subordinate court, unless there is no escape from it either in the law itself or in the decisions of the Supreme Court, which it is our duty to follow without question.

" The decisions of our courts show that there has been a gradual relief from the technical embarrassments which beset the citizens in their efforts to correct the mistakes and frauds of elections. The courts have given a willing hearing to well-considered charges of fraud, and have assisted, so far as was consistent with their functions, the correction of false election returns.

" In the spirit of these decisions the act of 1874 originated. It was intended to arrest a great and growing evil, which

threatened the existence of our free institutions; which made the franchise of voting a farce; which deprived the honest majority of their right to rule, and cheated the legally elected out of the honors and profits of office. It should therefore be construed in the light of judicial decisions and in the spirit of its manifest purpose.

"Chief Justice AGNEW, in the Election Cases, 65 Pa. 31, said : ' The object of the law is to give the people a remedy. It is their appeal from the election board to the court from an undue election or a false return. The law is therefore remedial, and to be construed to advance the remedy.'

" The first objection to the petition is, that it embraces four returns, which are alleged to be undue.

"In Marshall v. Baldwin, 11 Phila. 384, this court said: ' When it is remembered that in cases of contested election the courts are required to decide upon the " merits " we may understand why they have always looked with disfavor upon merely technical objections, and have labored to strip these cases of all impediments to decisions upon the " merits " alone. Accordingly, we find President Judge THOMPSON, of this court, giving emphatic declaration to this idea in Mann v. Cassidy. He says : " It is obvious that, if the court were to require the same precision and certainty in an election petition as in pleadings between parties to a suit at law, the difficulty of stating precisely the manner in which a fraud has been perpetrated, or an undue return made, would, to a great degree, nullify the law itself, which designs that such charges shall be investigated." ' This idea of freeing the proceedings from technicalities, which would embarrass them or render them burdensome, runs through all the decisions.

" It is too late now, when the intricacies of pleadings are scarcely a memory, to introduce them into proceedings which are to be determined upon the ' merits ' alone.

" In this case four persons are charged with being improperly returned as elected to common council. They were voted for or against by all the voters of the ward to represent them in council, at the same election and at the same polls. The return of each and all is called in question. The petition avers that each one was improperly returned as elected, and that an examination of the ballots will establish this fact. They are

not thereby compelled to share each other's labors.   Each one, if properly elected, can show it by the ballots, and he can be in no way embarrassed or helped by the facts which relate to the others.   But this is all a matter of proof, and in the hearing the court will always make such orders and decrees as will protect the right of all litigants.

" It should be recollected that this is not a proceeding in which the persons who are alleged to be elected are the actors. The petitioners are the actors, and responsible for the costs which may be incurred.   It is, moreover, a proceeding to protect and enforce the right of all the voters.

" To require four proceedings would necessarily increase the expense and trouble to parties and witnesses.   Each witness would be heard four times, each item of evidence, or paper, or document would be four times examined and taken down. The final adjudication would thus be delayed, perhaps, until the terms of office had expired.   Such hardship should not be imposed, at least in cases of this kind, without good and sufficient reasons, and none such have been suggested or occur to us.   Moreover, it has not been made manifest how the persons whose return is questioned can be benefited by four proceedings or injured by one.   When it shall appear that their individual interests may be jeopardized we shall find a way to protect them.   There is no other way by which the truth of this election can be ascertained, with a just regard for the rights of all.   If single petitions are presented, single persons must be selected as contestants ; and the evidence might show that neither was elected.

" This is, perhaps, the first time that this question has arisen. There are no authorities or analogies to aid us.   And it must be admitted that it is open to discussion.   Why should we, in a doubtful matter, which can only be settled by the Supreme Court, be asked to stop such an important inquiry, and thereby give protection and encouragement to election frauds.

" It is not necessary to consider the second reason.   The third objection is as follows : The affidavit to the petition is fatally defective in this : That it omits two important requisites of the act of May 19, 1874.   (*a.*) It does not set forth that the petitioners verily believe the facts stated therein to be true. (*b.*) It does not set forth that, according to the best of their

knowledge and belief, the election was undue or illegal. The words of the affidavit to the petition are, in lieu of those required by the statute, the following : ' That the statements set forth in the above petition are just and true to the best of their knowledge and belief. There is no averment respecting the election, or that it was undue or illegal.'

" The act of 1854, under which the Election Cases were decided, required that: ' At least two of the complainants should take and subscribe an oath or affidavit that the facts set forth in such complaint are true.' The oath to the petitions was, ' that the facts are true to the best of their knowledge and belief,' as in the present proceeding. The Supreme Court held this to be sufficient. Chief Justice AGNEW said, ' The law does not prescribe the form of the oath. It certainly was for the court, in judging of its own jurisdiction, to interpret the words of the affidavit. The special purpose of the oath is to initiate this remedy—to give it the impress of good faith and probable cause.'

" In the same cases the requisites to give the court jurisdiction are given by Chief Justice AGNEW, as follows : 'It (the petition) sets forth in befitting terms the general election of 1868, the persons voted for, the number of votes returned for each, and the majority for the persons returned , charges an undue election and false returns, alleges the election of the opponent, and sets forth the grounds of the illegality of the election.'

" The petition before us is wanting in none of these particulars, and has in addition the averment that the petitioners are qualified voters, which was the only point decided by the Supreme Court in Welti's Case, 3 W. N. 165.

" It specifically avers that there was a ' false return and an undue election ; ' that ' the said election and the said return is false, fraudulent and untrue.' The specifications of the petition are that certain ballots in the several divisions were cast ' in an improper, informal and illegal manner, and that the said election was false, fraudulent and untrue and void, and the return thereof false.'

" It will not be questioned that these averments duly assert that the election returns were undue and illegal. Does the affidavit sufficiently aver that these facts are true ?

" The act of 1874 prescribes no form of oath. It requires only that what is essential to give jurisdiction should have the sanctity of an oath. If, therefore, the petition is sufficient, any words in the affidavit which will give this are sufficient; even if the act prescribed special words, it would not be contended that synonyms could not be used instead.

" The act requires that the affiants shall swear that there was an undue election, and the petition sets that out. It is not a collection of isolated facts, but a combination in which the facts are linked together, forming a continuous whole—a narrative.

" When a thing or an event is presented the image of it stands out. This is a statement, and it may be of one or many things. A fact is a thing done or made. Voters and votes, and their computation, are individual facts. When it is said that ten votes were cast for A. B. and returned for C. D., a collocation of facts is presented, leading to the conclusion—a fact itself—that the return of C. D. is undue, to the extent of twenty votes. This is a statement, a presentation of each and all the facts.

" To present any such facts, forms of expression must be used. In whatever manner this is done it is a statement. It may be of a single fact or a combination of facts, depending upon and having relation to one another. In every case it is an averment of each and all the facts therein contained. The several statements are the different parts of the petition, and the petition may be said to be a combination of these statements.

" When, therefore, the affiants swear that the statements in the petition are true, they swear that each and all the facts are true. If this be so, then not only is this form an equivalent for the other, but it is a literal compliance with the requirements of the act.

" We are disposed to consider with favor the decision of Judge Mitchell in Barnes's Case, 11 Phila. 381, but it will be observed that the ground of his decision is that the language of the affidavit is essential to confer jurisdiction. This proposition he does not fortify with his usual forcible reasoning, or by an authority, and it is opposed to the decision of the Supreme Court upon this point in the Election Cases.

" In Marshall v. Baldwin, 11 Phila. 383, it was said : ' It is the petition which gives the court jurisdiction. It is embraced

in two pages of the printed book filed. The remaining ninety-five pages are merely details of the facts which make up the general statements of the petition, and show how " the false return and undue election" was accomplished. They "specify more particularly the grounds of contest." They are not necessarily an essential part of the proceedings, and the parties litigant may go to trial and judgment without them. They do not give jurisdiction, nor is their absence in any stage of the trial fatal.'

" In the Election Cases, Chief Justice AGNEW said: ' The law does not prescribe the form of the oath. It certainly was for the court, in judging of its own jurisdiction, to interpret the words of the affidavit. The special purpose of the oath is to give it the impress of good faith and probable cause.'

" Does the affidavit in this case give the impress of good faith and probable cause? In both respects we have no hesitation in saying that there can be no doubt that these are its characteristics. Moreover, the affiants could be convicted of perjury if they have sworn falsely. As this is a matter which concerns ourselves only, it is not necessary to give the reasons of our actions in this respect.

" From what has been said it is obvious that we do not regard the form of the affidavit or the specifications as essential to confer jurisdiction. We may add, that we are not convinced that it is necessary to amend the defects in the specification, which appear to be mere clerical errors or the mistake of the printer.

" These defects, however, may be important and material when the evidence is presented. In view of that event we may now consider the question of amendment.

" When the petition contains averments sufficient to give jurisdiction the jurisdiction attaches, and amendments may be allowed at any time. In Welti's Case the Supreme Court said : ' It does not appear in the petition for the amendment that the original petitioners were qualified electors who had voted at the election. It is therefore unnecessary to decide whether a petition presented by the requisite number of qualified electors who had voted at the election, giving jurisdiction in fact within the proper time, may be amended in its form merely, by setting out the fact.'

" In Barber's Case, 10 Phila. 579, the petition was signed by

the requisite number, but one was not a qualified voter. Judge HARDING, P. J., allowed an amendment substituting a qualified voter.

" In Barnes's Case, 11 Phila. 382, Judge MITCHELL said : 'It is too late now to question the power of amendment in election cases. It has been established by the decisions of this court, affirmed by the Supreme Court. The act of 1874, section 18, provides that the petition, after filing, shall not be amended unless such amendment shall be allowed by the proper court or judge, after notice to the other party and hearing.'

" In Marshall v. Baldwin it was held that it was the petition which gave jurisdiction, and that the allowance of an amendment was no longer a mere matter of discretion.

" When the petition presents a proper case, and an evident intention to comply with all the requirements of the law, we should not allow a mere technical difference in the form of the expressions or the words used, to stifle an investigation of frauds which disfranchises a whole ward and prevents their proper representation in a legislative body, which controls the taxation of the property, and has in its keeping the comfort, health and prosperity of more than a million of people. In this we but follow the decisions of the courts, the demands of the law, and our convictions of duty.

" The motion to quash is discharged."

*Errors assigned* were (1) refusal to quash petition ; (2) entertaining jurisdiction ; (3) discharging rule to quash petition

*Mayer Sulzberger, James L. Miles* and *Francis A. Osbourn* with him, for appellants.—There is one petition against four councilmen, whereas a single petition can be only against one. The joinder of four is improper : Cass Township Election, 2 Leg. Ch. 283 ; Coopersdale Election Case, Q. S. Cambria Co., 13 Pa. C. C. R. 62 ; Act of March 21, 1806 ; Welti's Case, 3 W. N. 165 ; Dickey v. Reed, 78 Ill. 261 ; McCrary on Elections, 401 ; Moulton v. Reid, 54 Ala. 320 : State v. Stewart, 26 Ohio, 216 ; Paine on Elections, § 811 ; Salem Twp. Road, 103 Pa. 250 ; Norwegian St., 81 Pa. 349 ; Skerrett's Case, 2 Parsons, 514 ; Hinchman v. R. R., 17 N. J. Eq., 75 ; Governor v. Webb, 12 Ga. 189 ; Masters v. Freeman, 17 Ohio St. 323 ; Sage v. Mosher, 28 Barb. 287 ; Green v. Liter, 8 Cranch, 229 ; Riggs

v. Bell, 39 La. An. 1030 ; Fawcett v. Fell, 77 Pa. 308 ; Clark v. Morgan, 13 Ill. Ap. 597 ; Le Roy v. Shaw, 2 Duer, 626 ; 17 A. & E. Enc. of Law, 561 ; Schoneman v. Fegley, 7 Pa. 433 ; Consolidation Act of 1854, P. L. 21 ; Act of July 2, 1839 ; §§ 129, 52, P. L. 547 ; Act of March 20, 1872, 31, P. L. 465 ; art. 8.

The qualifications for a common councilman are necessarily individual and not joint. He must individually take the oath of office which qualifies him individually to hold that office and perform its functions. He must individually receive the proper proportion of votes cast, and the fact that another common councilman on the same ticket does not receive the proper number of votes cannot affect the right of him who receives the proper number. Consequently, the office of councilman is an individual office, held by the individual, and has no relation with the office of another councilman from the same ward or from another ward. The mode of contest of such an office prior to the act of 1874 required a petition against the individual member attacked, in accordance with the statutes and customs relating to members of the legislature and members of councils. This uniform course of procedure was in no manner repealed or modified by the new constitution, or by the act of May 19, 1874, passed in pursuance thereof, whose object was to place the contest in a judicial instead of a political tribunal, solely to avoid partisanship in the hearing of the case. The act of 1874 must be strictly complied with, as was held in Welti's Case ; it makes use of language in the singular, and thus forbids the idea that it intends to change the language of the previous acts, which was also in the singular.

A writ of certiorari is the appropriate writ for the removal of a cause before judgment. The writ of error is the writ which removes it afterwards: Com. v. Simpson, 2 Grant, Pa. 438 ; Commissioners' Ap., 57 Pa. 452 ; Phila. & Trenton R. R., 6 Whart. 41. It lies to examine into the regularity of the proceedings of a contested election case : Chase v. Miller, 41 Pa. 403 ; Sheppard's Case, 65 Pa. 20. And all questions of regularity in proceedings under statute law: Pollard's Petition, 127 Pa. 522 ; Sheppard's Case, 65 Pa. 36 ; Matthew's Election, 92 Pa. 138. An order to quash based on a question of law appearing on the record is reviewable on certiorari : Grieb v. Kuttner, 135 Pa. 291.

*George Gluyas Mercer* and *John J. Moloney, Wm. Draper Lewis* with them, for appellees.—The reason for the rule that a contest for two or more officers cannot be raised by one and the same petition, when comprehended, shows that such rule has no application to the present case. In Cass Township Election Case, 2 Leg. Ch. 283; Coopersdale Election Case, 13 Pa. C. C. R. 62; and Vance v. Gaylor, 25 Ark. 32, there were two or more distinct offices joined in one petition. In the present case there is only one issue, and the.facts to be proved in the case of one candidate are the same as in the cases of the others. The question involved is not the qualification of councilmen or electors but the regularity of the election.

Proceedings in contested elections are statutory. No writ of error is given by statute. In such proceedings this court has allowed writs of certiorari after final judgment: Chase v. Miller, 41 Pa. 403; Ewing v. Thompson, 43 Pa. 372; Sheppard's Case, 65 Pa. 20. Where a certiorari in a statutory proceeding was granted before final judgment, it was quashed in the case of Bough Street, 2 S. & R. 418. Where the certiorari is in the nature of a writ of error it will not be granted until after final judgment: State v. Society, 35 N. J. L. 200; State v. Woodruff, 39 N. J. L., 75; State v. Paterson, 39 N. J. L. 489; Stokes v. Early, 45 N. J. L. 478; Lynde v. Noble, 20 Johns. 83; People v. Commissioners, 37 Barb. 126; People v. Supervisors, 43 Barb. 298; Hamilton's Case, 58 How. Pr. 290; Palms v. Campau, 11 Mich. 109; People v. County Judge, 40 Cal. 479.

OPINION BY MR. JUSTICE WILLIAMS, May 25, 1893:

The appeal in this case is from the refusal by the court below to quash the petition of Henry Acker and fifty-seven other citizens and electors of the twentieth ward of the city of Philadelphia, contesting the election of George W. Conrad, Charles K. Smith, A. Atwood Grace and M. M. Caverow to the common council from said ward. The petition was presented in court on the fifteenth day of March last, was adjudged sufficient in form, ordered to be filed, and the respondents directed to answer. On the fourth day of April the respondents, instead of answering, applied for and obtained a rule to show cause why the petition should not be quashed. This rule was heard and on the twenty-fifth day of April it was discharged. This appeal was then taken. The appellees have moved to quash

the appeal on the ground that an appeal does not lie from the order discharging the rule. The appellants have also asked that the record be returned to the court below for the purpose of making inquiry into an alleged discrepancy between the verification or certificate on the original petition filed, and the copies served. The last motion, after an inspection of the papers, is refused.

The motion to quash the appeal seems to us to be well founded. Our attention has been drawn to no provision of the election laws, or, of the several statutes relating to errors and appeals, giving a right to appeal from an order refusing to quash a petition in a contested election case. This proceeding is purely statutory and our jurisdiction over it, except for errors apparent on the record that may be reached on a common law writ of certiorari, depends on the statutes creating and regulating it. If we had jurisdiction by way of appeal as fully as in cases proceeding after the order of the common law it is by no means certain that this appeal could be sustained. The quashing or refusing to quash a writ or other process by which a defendant is simply brought into court to answer, rests in the sound discretion of the court out of which the process issues, and the action of the court upon such a motion, being the exercise of a judicial discretion, is not ordinarily reviewable : Renninger v. Thompson, 6 S. & R. 1 ; Breden v. Gilliland et al., 67 Pa. 34. In many similar motions the same rule has been held, as in a motion to set aside a rule of reference, Erie Bank v. Brady, 8 Watts, 530 ; to strike off an appeal, Gardner v. Lefevre, 1 P. & W. 73 ; to stay or to refuse to stay proceedings on a writ, Roop v. Meek, 6 S. & R. 542. So error will not lie to the refusal of a new trial, Howser v. The Commonwealth, 51 Pa. 332 ; nor to an order quashing a foreign attachment, Brown v. Ridgway, 10 Pa. 42 ; nor to an order refusing to quash, Lindsley v. Malone, 23 Pa. 24. Among the latest cases on this subject is Holland v. White, 120 Pa. 228, in which the refusal to quash a writ was held not to be reviewable on error. The petition and the order to answer, simply brought the respondents into court where they may be fully heard. There is no judgment or final order in the case, and the investigation is but just begun.

Assuming that the appeal in this case may have been intend-

ed to operate only as a common law writ of certiorari, and looking into the record in search of error we find only a petition, an order to answer, and a motion to quash, which has been refused; and it is very clear from the authorities cited that such a refusal would not ordinarily be inquired into by certiorari in a common law proceeding. We must therefore hold that no appeal lies from the order complained of under the laws which provide for the contest, and that the record discloses no error upon its face. The appropriate order under the circumstances is to grant the motion of the appellees and quash the appeal.

But we have a decided opinion upon the question which the learned counsel for the respondents seeks to raise. It is an important one and ought to be set at rest. We are disposed to consider it as though it was properly here. An election by ballot is the method the people have provided for the selection, by themselves, of their own officers. The result of the ballot is made up and certified by the election officers. A contested election is the proceeding devised by the people and established by law for the exposure and correction of either fraud or mistake on the part of the election officers, in making up and certifying the results of an election. The laws regulating the proceedings should be liberally construed and administered, in aid of the right of suffrage, and the purity of popular elections. Where any considerable number of the electors in a given district believe that the true result of the ballots cast has not been declared and certified by the election officers, they may have the correctness of the returns investigated, the votes examined and recounted, and the actual result of the election determined by the courts, by means of what is known as a contested election. The first step to be taken is for the electors to prepare and present to the court, if in session, or to the president judge in vacation, their petition setting forth their belief that the election as returned is undue and illegal, and in what respects the returns are incorrect, and asking the court to inquire into the truth of the facts alleged by them. The court or judge looks into the petition to see that the necessary formal averments are contained in it, adjudges it sufficient, directs that it be filed, and that the persons whose elections are disputed or denied have notice to appear and answer on a day to be named in the order. The act of 1874 declares that the parties to the contest shall be

" the petitioners complaining of the election and the person re-
turned as elected " by the officers whose return is contested.
The object of the contest is to test the correctness of the returns.
On the trial the court may hear the testimony of witnesses, re-
quire the production of the ballot boxes, open them, make a re-
count of the votes, and determine what the actual result of the
election was.  It may give this result final form by a decree
declaring the vote received by the several candidates and nam-
ing the persons elected.  It is very clear therefore that a con-
tested election is not a matter of private litigation between rival
candidates for office, but an official inquiry made at the in-
stance and on behalf of the electors for the purpose of ascertain-
ing whether the returns made by the election officers correctly
represent the votes cast.  It is true, ordinarily, that a single can-
didate is presented by each party for each office, and that the
returns will show the selection of one and the defeat of his com-
petitor; but it sometimes happens that two or more candidates
for the legislature, for councils, for school directors, or other
local or municipal office are to be chosen from the same district.
In that case each party puts forward its candidates who are
voted for upon the same ballot or ticket, and who are, or may
be elected or defeated together.  When this happens, and the
returns show the election of one set of the candidates ; and the
contestants alleged fraud or mistake calculated to affect the en-
tire ticket, and to destroy the returns as to each one of the set
returned as elected, we can see no reason for requiring the con-
testants to file as many copies of their petition as there are
persons upon the ticket returned elected.

The object of the contest is to investigate the correctness of
the returns.  The purpose of the petition is to set the machinery
of investigation in motion.  So far as the contestants may know,
the several persons, elected together on the legislative or coun-
cilmanic ticket, stand in the same position.  On the surface of
things they are each to be affected in the same manner by the
alleged mistakes or frauds.  If a corrupt election board has by
improper means increased the votes returned, by one hundred
or five hundred more than were actually cast for a given set of
candidates, and so certified to their election in the returns that
are the subject of the contest, it is reasonable to assume that
when this fraudulent addition has been corrected all the mem-

bers of the set returned as elected will suffer alike in the loss of the fraudulent vote. If there are reasons known to them or either of them why this may not be so, the respondents when they come to answer may set out these reasons and so sever in their answers and ask the court to allow them to sever in their trials. The court has ample power to make such order as may be needed for this purpose, and will see that each of the respondents has such opportunity to set up, or insist upon, whatever is peculiar to himself as shall seem necessary for his protection.

On this subject the court below reached a correct conclusion, and properly denied the motion to quash the petition of the contestants. If the order was properly before us on this appeal we should affirm it. We do not think it is, and for that reason we quash the appeal.