## Allegheny County Election.

Argued January 29, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*B. Robert Averbach,* with him *Mead J. Mulvihill,* for appellant.

*Charles Alvin Jones,* with him *B. B. McGinnis, Carl D. Smith* and *John J. Kennedy,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, March 19, 1934:

At the general election held November 7, 1933, a sheriff was elected for the County of Allegheny. The election was a close one, and thereafter certain electors duly instituted an election contest in the court of quarter sessions of the peace of that county against the candidate who, on the face of the returns, appeared to be elected. Desiring to inspect and make copies of certain of the papers, then on file in the office of the prothonotary of the court of common pleas and relating to that election, in so far as they concerned specified election districts, one of the counsel for contestants made application to that official to be permitted to do so. This application being refused, he filed a petition in the court of common pleas setting up the facts and therein praying the court to direct its prothonotary "to permit him, his associate counsel and others who may assist him, to inspect the aforesaid papers and records for the purpose of making

a copy thereof to be used in the preparation for, and in the [election] contest proceedings" then pending. The court below made the order requested as to (1) The numbered list of voters; (2) The oaths of election officers; (3) The record of assisted voters; (4) All affidavits of voters, as to qualifications and affidavits of witnesses thereto; and (5) The ballot check-lists, in the various election divisions specified in the petition. The order was accompanied by strict regulations regarding the manner in which the authority thus given should be exercised, and gave to the respondent, who is now the appellant, the right to have "persons delegated by [him] to represent [him] at the examination" of the records. From this order respondent has taken the present appeal, and the only question we are called upon to decide is whether or not the court of common pleas had power to make that order. We are convinced that it had.

Apparently supposing that petitioner had asked relief only under the Act of April 23, 1927, P. L. 363, appellant contended that the relief should have been limited to the "record of assisted voters," which is number (3) of the items specified in the order. This statute provides that "The record of assisted voters shall be returned by the judge of election [in each election district] to the prothonotary......with the tally sheet, triplicate return, list of voters and oaths of election officers. The prothonotary......shall file such record of assisted voters in [his office], and shall permit the same to be examined only upon a written order of a judge of the court of common pleas, permitting a named person or persons to make such examinations thereof." We need not stop to inquire whether or not this includes the right to examine the tally sheet, triplicate return, list of voters and oaths of election officers, since appellant's supposition that appellee claimed relief only under the Act of 1927, is erroneous, and since also other statutes provide for the relief sought as to the other papers referred to. The prayer of the petition specifies that it is applied for "in

186

accordance with the Act of 1927, P. L. 363, *and other acts made and provided for in such cases."* It suffices here, therefore, that the Act of 1927, expressly sustains the order of the court below so far as concerns item number (3).

In section 13 of the Act of January 30, 1874, P. L. 31, 37, reënacted in haec verba in the Act of April 28, 1899, P. L. 127, and in section 1 of the Act of May 6, 1909, P. L. 425, and in the Act of May 19, 1923, P. L. 267, and in the Act of April 1, 1925, P. L. 103, it is provided that "The triplicate returns shall be enclosed in envelopes, and sealed in the presence of the officers, and one envelope, with the unsealed return sheet, given to the judge, which shall contain one list of voters, tally paper and oaths of officers, and another of said envelopes shall be given to the minority inspector. All judges living within 12 miles of the prothonotary's office or within 24 miles, if their residence be in a town, village, or city upon the line of a railroad leading to the county seat, shall before 2 p. m. of the day after the election, and all other judges shall, before 12 m. of the second day after [the] election deliver and return, together with [the] return sheet, to the prothonotary of the court of common pleas of the county, which said return sheet shall be filed, and the day and hour of filing marked thereon, *and shall be preserved by the prothonotary for public inspection."* This statute sustains the order of the court regarding items (1), (2) and (4). Of course the "public inspection," therein provided for, does not merely contemplate looking at the documents referred to; where necessary, it will include also such an examination and copying thereof as will make the "public inspection" effective for good, particularly if authorized by the court in the custody of whose officer the papers are.

In section 24 of the Act of June 10, 1893, P. L. 419, 431, which reënacted in haec verba section 25 of the Act of June 19, 1891, P. L. 349, 362, it is provided that "After

the closing of the polls and before the ballot boxes are opened all the lists of voters upon which the numbers of the ballots are recorded, as now required by law, shall be placed in separate sealed covers, properly marked, and the stubs of all the ballots used, together with all unused ballots, and the ballot-check-list, shall also be enclosed in a sealed package properly designating the voting place, which package shall be sent to the proper office as required by law in the case of the ballots cast, and neither the said package nor the said lists of voters shall thereafter be opened, except by the return judges, or in the case of a contest, *or upon the order of a court of a competent jurisdiction.*" It is not denied that the court of common pleas is "a court of competent jurisdiction" concerning papers in the custody of its prothonotary. This statute therefore sustains items (1) and (5) of the order of the court below.

It is urged regarding this act, however, that the words "if there is no contest" should be inserted in the last part of the quotation, so as to make it read: "and neither the said package nor the said lists of voters shall thereafter be opened, except by the return judges, or in the case of a contest, or, *if there is no contest,* upon the order of a court of a competent jurisdiction." Unless something appears in a statute, or arises out of the circumstances of its enactment,—neither of which appears here,—we are not at liberty to interpolate words into a statute, the language of which is plain and unambiguous, so as to make it mean less or more or otherwise than its language plainly imports.

That the contents of the papers referred to in the foregoing statutes are not intended to be kept secret, is evident from the fact that by section 85 of the Act of July 2, 1839, P. L. 519, 539, it is provided that "It shall also be the duty of every prothonotary to give a certified copy of the list of voters and other papers deposited in his office by the judges of election, to any person applying for the

same, on payment of the usual fees, as in other cases";
and by section 126 of the same statute (page 546) it is
stated that, in case of his conviction of a failure so to do,
he shall be punished "by fine and imprisonment."

What we have already said disposes of the present
appeal, but it may be well to refer to a few other
relevant matters. In the first place, if we decided that
the petition filed in this case should have been filed in
the court of quarter sessions of the peace instead of the
court of common pleas, the judge who made the order
appealed from could transfer the record nunc pro tunc
from the latter to the former court. "Where proceedings
have been instituted or an appeal entered in the wrong
court, within the time prescribed by statute, and the
judges of the two courts are the same, the one in which
the proceedings were instituted, or to which the appeal
was entered, may certify the record to the proper court
nunc pro tunc, even after final decree": Field's App.,
305 Pa. 125. In that case we cite a number of our earlier
decisions sustaining the conclusion reached, among them
being Brown v. Com., 78 Pa. 122, 127, where we affirmed
the action of the court of quarter sessions of the peace
in transferring a murder case to the court of oyer and
terminer, after appellant had been tried, convicted and
sentenced to death, and had appealed to this court from
the sentence.

We can understand the feelings of a successful candi-
date in a hard-fought election, when his unsuccessful
opponent contests the election. "A bad loser" is prob-
ably the mildest term the former would apply to the
latter. Judges, however, cannot look at the matter in
this way. In Election Contests, 65 Pa. 20, 31, we said:
"The object of the law is to give the people a remedy. It
is their appeal from the election board to the court from
an undue election or a false return. The law is therefore
remedial, and to be construed to advance the remedy
......it is not to be supposed the legislature, represent-

ing the people, intended to subject the remedy to unreasonable or impossible conditions." So, too, in Moock v. Conrad, 155 Pa. 586, 597, it is stated that "A contested election is the proceeding devised by the people and established by law for the exposure and correction of either fraud or mistake on the part of the election officers, in making up and certifying the results of an election. The laws regulating the proceedings should be liberally construed and administered, in aid of the right of suffrage and the purity of popular elections."

Finally, the fact that we have preferred to answer this appeal by quotations from the relevant statutes, must not be misconstrued into the belief that we would reach a different conclusion if those statutes did not exist. Admittedly, the records desired are in the custody of the prothonotary of the court of common pleas and that tribunal is not required to withhold from interested parties the right of seeing them until its officer is subpoenaed to produce them on the trial of the contested election case. The only result of this would be to cause unnecessary delay in that trial, benefiting no one, especially in times like these, when delay in judicial proceedings should be the last thing favored by other already overburdened courts.

The order of the court below is affirmed and the appeal is dismissed at the cost of appellant.