## Behrens' Petition

ARNOLD, Deputy Attorney General, June 7, 1934.—Fred Behrens has presented to the Attorney General his petition, praying that a proceeding in mandamus be instituted to require George Woolbaugh, Peter C. Van Buskirk, and Harry F. Mackes, County Commissioners of Monroe County, to permit the petitioner to inspect records, accounts, minute books, and other documents in the office of the respondents.

Behrens is one of 10 or more taxpayers of Monroe County, who, in behalf of the county, have appealed to the court of common pleas of that county from the report of the county auditors for the year 1932, in accordance with the provisions of section 1035 of The General County Law of May 2, 1929, P. L. 1278.

Before presenting this petition to the Attorney General, the petitioner had applied to the Court of Common Pleas of Monroe County for an order on the county commissioners to permit examination of the records. That application was made in the appeal proceeding. The court, by President Judge Samuel E. Shull, refused the application. The grounds on which the refusal were based were, first, that in the absence of specific legislative authority the records of the county commissioners' office were not open to examination by the public, and that the petitioner had not shown any special interest in the record; and, second, the court suggested that the proper procedure to obtain the relief there sought would be by petition for mandamus. However, it does not appear that the portion of The General County Law hereinafter quoted was called to the court's attention.

Thereupon, the present petition was filed.

The petition alleges the pendency of the appeal from the audit, possession by the respondents of records of the county upon which the audit was based and which are involved in the appeal, and the refusal of respondents to permit the petitioner to examine the records.

An answer was filed, in which the respondents admitted most of the allegations of the petition but alleged that the petitioner had been given access to the

books for an extended period and that there was no need for further examination.

A hearing was held in the office of the Attorney General, at which the petitioner was present in person and with counsel, as likewise were the respondents and their attorneys.

From the testimony produced at the hearing, it was clear that the petitioner did examine the records in the office of the commissioners; but that occurred before publication of the audit from which this appeal was taken, and petitioner then looked only at books other than those demanded here.

Both parties have cited to us cases which they consider support their respective positions. Petitioner relies primarily on two unreported cases in Luzerne County, in which the court of common pleas made orders for the examination of records similar to the order sought by the petitioner in the Court of Common Pleas of Monroe County above referred to. The respondents have pointed to a number of cases which refused permission to examine certain public records and which stated generally that, in the absence of statutory authority, the public does not have a right to examine every public record, and that only persons having a direct interest therein may do so.

We have no inclination to dispute the authority of the principles laid down by respondent's cases, but do not persons who have appealed from a county audit have an interest in the county records which is distinct from that of an ordinary member of the general public? We cannot escape a conviction that the question is sufficiently important to warrant the institution of a mandamus proceeding, in which the matter can be tested and in which the decision of an appellate court may be obtained.

Section 1035 of The General County Law of 1929, under which the appeal from the audit was taken, contains the following language:

"Appeals *in Behalf of County* by Taxpayers.—Any ten or more taxpayers of the county may, *in behalf of such county*, appeal from the report of its county auditors or controller to the court of common pleas, or prosecute any suit or action in behalf of said county, or defend such county in any suit, process or action now pending, or that may be brought against such county, by appeals from county auditors' or controllers' reports or otherwise. . . ." (Italics ours.)

It is clear from the statutory language just quoted that persons in the position of this petitioner are not acting as intermeddlers; they are not seeking to examine these books simply as members of the general public. In a sense, they have a special interest in these records, bcause they are involved in litigation which involves the records. But more important still is the fact that, above any individual interest which these persons may have as litigants, they are, by virtue of express statutory provision, the representatives of the county itself. For the purposes of this litigation, they are official representatives of the county, and the county commissioners are individuals defending their official conduct. It would be a strange situation indeed if persons who, under express authority of the legislature, have become the representatives of the county to protect the county from alleged wrongdoing and who have been required to give bond for their good faith and success should be denied access to the records of the county which form the basis of the controversy, and if those records may be kept closed in the possession of the persons whose administration is to be examined in the litigation.

It seems to us that the intention of the legislature can be carried out and its purposes accomplished in an orderly manner only if persons who have been willing to assume the responsibility of the appeals in behalf of the county are given every proper assistance to examine the records in question, not only by

themselves but with such expert assistance as they may deem necessary, of course under reasonable restrictions and safeguards.

It was suggested by Judge Shull that there was no need for such an examination of the records, because at the trial the burden of proof will be on the county commissioners and it will be incumbent on them to bring into court all pertinent records where the appellants may examine them.

A similar suggestion was before the Supreme Court recently in Allegheny County Election, 314 Pa. 183 (1934), a case which involved the examination of records of a prothonotary's office which were involved in an election contest. The court said (p. 188):

". . . In Election Cases, 65 Pa. 20, 31, we said: 'The object of the law is to give the people a remedy. It is their appeal from the election board to the court from an undue election or a false return. The law is therefore remedial, and to be construed to advance the remedy . . . it is not to be supposed the legislature, representing the people, intended to subject the remedy to unreasonable or impossible conditions.' So, too, in Moock v. Conrad, 155 Pa. 586, 597, it is stated that 'A contested election is the proceeding devised by the people and established by law for the exposure and correction of either fraud or mistake on the part of the election officers, in making up and certifying the results of an election. The laws regulating the proceedings should be liberally construed and administered, in aid of the right of suffrage and the purity of popular elections.'

"Finally, the fact that we have preferred to answer this appeal by quotations from the relevant statutes, must not be misconstrued into the belief that we would reach a different conclusion if those statutes did not exist. Admittedly, the records desired are in the custody of the prothonotary of the court of common pleas and that tribunal is not required to withhold from interested parties the right of seeing them until its officer is subpoenaed to produce them on the trial of the contested election case. *The only result of this would be to cause unnecessary delay in that trial, benefiting no one, especially in times like these, when delay in judicial proceedings should be the last thing favored by other already overburdened courts.*" (Italics ours.)

The petition presented to the Attorney General requested that the proceeding in mandamus be instituted in the Court of Common Pleas of Dauphin County. In an ordinary case, that request would be granted. However, since the present case involves and in a sense is supplementary to litigation already pending in the Court of Common Pleas of Monroe County, we feel that that court is the proper forum for the institution of the proceeding here sought. It is true that that court has already dismissed a rule to accomplish the same result which the mandamus proceeding will seek, but, as we have pointed out, Judge Shull himself indicated that the proper method to raise the question was by mandamus. Presentation of the petition in the Court of Common Pleas of Monroe County will set in motion an orderly procedure for having the matter determined in such a way that the matter may be carried to the Supreme Court for final decision. Such an appeal was not possible from the prior ruling of the Court of Common Pleas of Monroe County, since that was but an interlocutory order.

Counsel for the petitioner may submit a form of petition for the signature of the Attorney General.

From C. P. Addams, Harrisburg, Pa.