## In re Contested Election in Kline Township

*Ralph M. Bashore, John Skweir, John H. Dando,* and *Conrad A. Falvello,* for petitioners.

*C. E. Berger* and *R. A. Freiler,* contra.

PALMER, J., November 19, 1934.—At the election held in Kline Township, Schuylkill County, Pa., on November 7, 1933, the return from the election of officials to the County Return Board showed the election of the following officials in that township; Peter Sopper and Joseph Bushta, as justices of the peace; Carl McAloose and Edward Mears, as school directors; John Anckzarski, as tax collector; Michael Luchetta, as auditor; Mike Galovitch, as supervisor; Joseph Nesgoda, as property assessor; Charles Ritsick, as judge of elections; and Charles Venduro, as registry assessor. All these were the Democratic candidates for the respective offices.

A recount of the ballots by the court under the Act of April 23, 1927, P. L. 360,

certified to the computation board, showed the election of the following men to the respective offices: Joseph Bruno and Stephen Condur, as justices of the peace; Salvatore Notaro and Stephen Sekarak, as school directors; Philip Bruno, as tax collector; John Gallus, as auditor; Andrew Chabin, as supervisor; Michael Wanuga, as property assessor; S. F. Gallo, as judge of elections; and Orlando Forke, as registry assessor. These were the Republican candidates.

Within 30 days of the said election, petitions for contest were filed by qualified electors of the said Kline Township, asking this court for election contests in all the cases as above set forth. The successful candidates under the recount, to wit, the Republican candidates, filed answers in all the cases, and by order of this court on February 5, 1934, G. Harold Watkins, Esq., was appointed examiner to take testimony in the proceedings and report his findings to this court. He duly qualified and, after he had in due form conducted hearings and taken testimony, filed his report with findings of fact on September 8, 1934, showing that the contestants had successfully proved the election of the Democratic candidates for the various offices involved in the proceedings. The respondents filed exceptions and, after argument was heard, both sides filed briefs on the said exceptions to the findings of the master and examiner. The case is now before this court for decision on these exceptions.

In their brief, the exceptants raise no objections on the merits of the findings of fact made by the examiner. This is in effect acquiescence to that extent with the said findings of fact, and the only question that is left for our decision is that expressly raised by the respondents' exceptions, to wit, that the examiner was without jurisdiction under the pleadings and petitions filed to make the findings of fact that the various Democratic candidates received a majority of the votes.

These proceedings are controlled by the Act of May 19, 1874, P. L. 208, and the Act of April 23, 1927, P. L. 360. To discuss this problem effectively, we must examine the provisions of these acts of assembly.

Section 18 of the Act of 1874 provides that, in case of a contested election, "the commencement of proceedings . . . shall be by petition, which shall be made and filed . . . within thirty days after the day of election", etc.

Section 1 of the Act of 1927 provides that "the court of common pleas, or a judge thereof, of the county in which any election district, precinct, or division is located, shall open the ballot box of such election district, precinct, or division used at any general, municipal, special, or primary election held therein, and cause the entire vote thereof to be correctly counted, by persons designated by such court or judge, if three qualified electors of the ward of a city or borough containing such election district, precinct, or division, or, if the election district, precinct, or division is not contained in a ward, three qualified electors of such election district, precinct, or division, or of a contiguous or adjacent election district, precinct, or division, shall file, as hereinafter provided, a petition and affidavit alleging that, upon information which they consider reliable, they believe that fraud, although not manifest on the general return of votes made therefrom, was committed in the computation of the votes cast in such election district, precinct, or division, or in the marking of the ballots or otherwise in connection with such ballots. It shall not be necessary for the petitioners to specify in their petition the particular act of fraud they believe to have been committed, nor to offer evidence to substantiate the allegations of their petition."

Section 5 of the said Act of 1927 provides: "Ballot boxes may be opened,

under the provisions of this act, at any time within four months after the date of the general, municipal, special, or primary election at which the ballots therein shall have been cast. If any ballot box shall have been opened, under the provisions of this act, before the completion of the computation and canvassing of all the returns for the county, and the court shall discover therein any fraud or substantial error, it shall correct, compute, and certify to the return judges, or the return board, for the said county, the votes of the election district, regardless of any fraudulent or erroneous entries made by the election officers thereof; and it shall be the duty of the return judges or return board to enter in the returns the figures so certified, and to correct accordingly any entries previously made in the papers being prepared by the said return judges or return board. No order or decision of said court hereunder shall be deemed a final adjudication regarding the results of any election or primary so as to preclude any contest thereof; and no such order or decision shall affect the official return of said election district, unless the ballot boxes shall have been opened before the completion of the computation and canvassing of all the returns for the county as herein provided, or unless a contest shall have been instituted in the manner now or hereafter provided by law."

The argument of exceptants, in brief, is this: The petitions of contest clearly state that certain persons named were elected to certain offices named by virtue of a certificate of recount made by the Hon. Roy P. Hicks, President Judge of the Court of Common Pleas of Schuylkill County, on November 17, 1933, and that the election of the officers as aforesaid as a result of said recount "was false, undue, and illegal", stating the reasons for the said allegations. This constitutes a challenge to such officers solely on the ground that the result of the recount (the source of the title of the officers involved) "was false, undue, and illegal." The recount does not affect in any manner the title to office, and therefore a challenge of the validity of the recount does not affect the original returns, which can be attacked only by a contest of the original proceedings, which the contestants in this case wish to support rather than attack and which the contestants do not attack by their petition of contest, which by its express language challenges not the original returns but the recount returns. Therefore, conclude the exceptants, the examiner was without jurisdiction to make findings of fact with respect to the original returns.

In other words, the above argument amounts to this: The candidates named as duly elected upon the recount maintain that a recount does not affect the title to office and that the original returns stand unless contested, and at the same time urge that they are entitled to the offices because of the result of the recount and that the candidates returned as victorious by the original returns are powerless and have no means of attacking the result of the election as it appears after a recount has been had under the Act of 1927, supra. Is there validity to such an argument?

There is one obvious defect in the above line of reasoning. The respondents in this argument assume that "the recount does not affect in any manner the title to office, and the original returns must prevail unless set aside in a contested election proceeding." In the first place, if the proposition is correct as stated by the respondents, then the original returns still stand and the Democratic candidates are entitled to the various offices, whereas the respondents take the position that the Republican candidates are so entitled. Secondly, the proposition is not true in the case at bar because, under the language of section 5 of the Act of 1927, the order or decision on recount does affect the official return if "the

ballot boxes shall have been opened before the completion of the computation and canvassing of all the returns for the county as herein provided, or . . . a contest shall have been instituted in the manner now or hereafter provided by law." In the case at bar, not only one but both these conditions were satisfied, and therefore the recount does, under the act of assembly, affect the title to the offices contested here.

Furthermore, we do not believe that it was the legislative aim to create a situation such as the above reasoning by the respondents would lead to if we were to indulge in it. If we are to believe the respondents, the situation is as follows: Where A is returned as elected by the original returns and B, his rival, is certified by the recount, A is without remedy. Thus the result of the recount is final although section 5 of the Act of 1927 expressly says otherwise.

This is the inevitable result which must follow from the respondents' argument, for they say A's only remedy is by petition under the Act of 1874 which, according to their opinion, must attack only the original returns. But A does not want to attack the original returns which declared him the successful candidate. Therefore, he is without remedy, since there is no independent method of attacking the recount certification. We cannot agree with such an interpretation of the Act of 1927.

A study of section 5 of the said Act of 1927 shows that the court, if it discovers fraud, does not make a return independent of the return judges or return board. Rather, the statute provides that "if any ballot box shall have been opened, under the provisions of this act, before the completion of the computation and canvassing of all of the returns for the county, and the court shall discover therein any fraud or substantial error [which is the case in the case at bar], it shall correct, compute, and certify to the return judges, or the return board, for the said county, the votes of the election district . . . and it shall be the duty of the return judges or return board to enter in the returns the figures so certified, and to correct accordingly any entries previously made in the papers being prepared by the said return judges or return board."

This clearly indicates that the act of assembly does not contemplate any independent returns as a result of the recount but that the recount is to serve merely as a means of correction of the original and only returns which are filed by the return judges or return board. Any objection to the results of the recount is really an objection to the corrected original and only returns, therefore, and as such is a contest of the returns which must be instituted in accordance with the provisions of the Act of 1874. In the light of this discussion, it appears that on principle there is no foundation for the exceptions of the respondents.

Neither is there any validity to the respondents' position on authority. The case which repudiates the arguments of the respondents is Armstrong's Appeal, 293 Pa. 1. The facts in that case, bearing a strong analogy to the facts of the instant case, were: At an election held November 8, 1927, Robert F. Sample and H. Russell Anderson were rival candidates for the office of school director in Hampton Township, Allegheny County, Pa. Before the returns were computed and canvassed, a petition was duly filed, as authorized by the Act of April 23, 1927, P. L. 360, asking the court of common pleas to impound the ballot box in the second election district of the township and to direct the votes therein to be correctly counted by the special recounting board appointed by the court. The petition was granted, and the recount was made. The effect of the recount was to decrease the vote of Sample and increase that of Anderson,

so as to give the latter a majority of the votes cast in the townshp. The report was approved by the court, which duly certified it to the proper officials, who thereupon computed and canvassed all the returns and issued a certificate of election to Anderson. The other facts and the decision are not relevant to our purposes; the significant part of the opinion is that in which the court says: "thirty days after the election is allowed for instituting the proceedings [under Section 18 of the Act of May 19, 1874, P. L. 208, 213]; and Sample had plenty of time to contest the election after Anderson had been declared elected."

In other words, the court in Armstrong's Appeal states that a candidate who is defeated by virtue of a recount under the Act of 1927 has only one remedy and that is under the Act of 1874. The court states: "The Act of 1927 . . . . was not intended to and did not disturb the then existing practice, which required the candidate, who appeared on the *face of the returns* to be defeated, to contest the election". (Italics ours). The "existing practice" was and still is to proceed under the Act of 1874. This the contestants in the case at bar, who appeared to be defeated on the face of the corrected returns as did Sample, did. Therefore, they conformed with the mandate of the Supreme Court as laid down in Armstrong's Appal, supra, and the objections of the respondents is without foundation or merit. This disposes of all the exceptions except the second.

The second exception is supported by the respondents on an entirely independent ground. The exception reads: "The examiner was without jurisdiction under the pleadings and petitions filed to make the following finding: 'We therefore find, and so recommend, that Peter Sopper and Joseph Bushta, having received a majority of the vote cast for the office of justice of the peace in said township, are elected to the office of justice of the peace in said township for the full term of 6 years each'." The respondents support their argument that the examiner was without jurisdiction to make the above finding with the proposition that "the right of different persons to different offices cannot be contested by filing a single petition and bond." Although this may be the correct rule in some cases, it is not applicable in the case at bar. We need not go into detail concerning this matter, because the case of Moock et al. v. Conrad et al., 155 Pa. 586, which was affirmed by the case of Harris' Appeal, 157 Pa. 637, which is cited by counsel for respondents, is a sufficient answer. In that case, the court below described a case where two or more candidates for the legislature, for councils, for school directors, or other local or municipal office are to be chosen from the same district and each party puts forward its candidates who are voted for upon the same ballot or ticket, and who are or may be elected or defeated together, and the returns show the election of one set of candidates and the contestants allege fraud or mistake calculated to affect the entire ticket, and to destroy the returns as to each one of the set returned as elected, and said that in such case "we can see no reason for requiring the contestants to file as many copies of their petition as there are persons upon the ticket returned elected."

That therefore disposes of the grounds for the respondents' second exception.

We conclude, therefore, that both on authority and on principle the exceptions of the respondents are without foundation.

And now, November 19, 1934, the exceptions to the report of the master and examiner are overruled and the recommendation of the said master and examiner that the contestants have successfully shown that the following candidates received a majority of the votes for the respective offices is confirmed, and the said candidates are hereby declared the duly elected officers for the designated offices in the Township of Kline, Schuylkill County, Pa.:

Peter Sopper, justice of the peace for a term of 6 years; Joseph Bushta, justice of the peace for a term of 6 years; Carl McAloose, school director for a term of 6 years; Edward Mears, school director for a term of 6 years; John Anckzarski, tax collector for a term of 4 years; Michael Luchetta, auditor for a term of 6 years; Michael Galovitch, supervisor for a term of 6 years; Joseph Nesgoda, property assessor for a term of 4 years; Charles Ritsick, judge of elections for a term of 2 years; Charles Venduro, registry assessor for a term of 4 years.

HOUCK, J., concurring.—I concur in the judgment of the court that the contestants have successfully shown that the candidates named received a majority of the votes and that they are the duly elected officers for the designated offices. I do not agree with all the reasoning in Judge Palmer's opinion nor with some of the statements of fact contained therein. I feel impelled, therefore, to state my views upon the record.

The original election returns made by the election officers of Kline Township showed the election of every officer now declared elected by the judgment of the court. A petition to open the two ballot boxes of Kline Township was presented to court pursuant to the provisions of the Act of April 23, 1927, P. L. 360. The ballot boxes were opened, and the ballots were recounted under the supervision of Hicks, P. J. The recount showed that an entirely different set of candidates than those returned as elected by the election board had received a majority of the votes cast. The Act of 1927, under which the ballot boxes were opened, provides, inter alia, as follows: "If any ballot box shall have been opened, under the provisions of this act, before the completion of the computation and canvassing of all of the returns for the county, and the court shall discover therein any fraud or substantial error, it shall correct, compute, and *certify to the return judges, or to the return board, for the said county,* the votes of the election district . . . and it shall be the duty of the return judges or return board to enter in the returns the figures so certified, and to correct accordingly any entries previously made in the papers being prepared by the said return judges or return board" (italics mine).

The ballot boxes were opened before the completion of the computation of all the returns for the county. At the election in question, in addition to the municipal officers involved in this contest, candidates for judge of the orphans' court, district attorney, sheriff, and jury commissioner were voted for, as well as delegates for or against repeal of the prohibition amendment; the voters also voted on amendments to the State Constitution and on Sunday sports. Upon the completion of the recount of the ballot boxes, the court certified that substantial error and fraud had been committed in the computation of the votes cast, certified the proceedings to the district attorney for appropriate action, and made this further order: "The court having certified that it discovered therein fraud or substantial error, and having corrected and computed the votes, as thus corrected and computed, the court certified to the judges of the court of common pleas, as the return judges or the return board, the votes of the Honeybrook Election District of Kline Township as set forth in the foregoing finding under the heading 'Recount made by the court' for the several candidates, offices, proposed amendments, and questions submitted to the voters at said election, for further proceeding by the return judges or return board according to law."

The effect of this order was to certify to the county return board the corrected vote for the candidates for county offices, for delegates for or against repeal, and on the questions contained on the ballot. The county return board

had absolutely nothing to do with the returns for the municipal offices here in question. It was not a return board to compute and canvass the votes cast for these municipal offices, it was without power to certify anything concerning them, and it was without power to issue certificates of election to any of them. Consequently, the only further proceeding, according to law, which the return board could take was to correct the returns as they affected county officers, constitutional amendments, and Sunday sports. To indicate this beyond cavil, a special certificate was prepared and appended to the computation of the vote made by the return board. This certificate is as follows: "I, the President Judge of the Court of Common Pleas of Schuylkill County, hereby certify the within statement as a correct computation of the votes returned as cast for judge of the orphans' court, district attorney, sheriff, jury commissioners, Sunday sports, and amendments to the Constitution of Pennsylvania (nos. 1 to 12, inclusive), in the several districts of the said county at the election held November 7, 1933."

We have already indicated that, under the act of assembly by which the ballot boxes were opened, the court, after the recount, could certify the corrected return only to the county return board. It was without power to certify the corrected return to any other return board and did not so certify it. The result was that the recount made under the supervision of the court, not being certified to the return judges for the offices which are the subject of the contest, did not in any way whatsoever affect the returns for these offices as made by the election board. In other words, the recount did not change the returns for these particular offices and did not affect the election. It would appear, therefore, that there was no necessity for an election contest since the recount was not a basis for a valid certificate of election to any of these municipal officers. The sequel clearly shows the misapprehension which has characterized the proceeding throughout. The clerk of courts, designated by the law as the officer to issue certificates of election to school directors, issued certificates to Carl McAloose and Edward Mears, who are now, by judgment of the court, declared elected. The election officers of the two districts in Kline Township issued certificates of election to Salvatore Notaro and Stephen Sekarak. The school board seated Notaro and Sekarak. Their certificate of election is invalid, and they have no title to the office. The plain, efficacious, and speedy remedy to oust them from the offices which they usurped without legal warrant was quo warranto. Why it was not pursued we have no way of telling. The same comment applies to the other offices in question. For auditor, supervisor, assessor, and judge of election, the only return board was the election board itself. It was the only proper authority to issue certificates of election for these offices. It could issue valid certificates only upon the result of the vote as determined by it. No corrected returns were ever certified by the court to the election board, and it was without power to issue certificates of election upon the recount as made by the court. If certificates were issued by the election board upon the recount, they are entirely lacking in validity and conferred no title to the office upon the recipient. Here again the remedy to oust them from the offices which had been usurped was quo warranto.

By instituting an election contest, the candidates challenge an election which, as shown by the only returns which have any validity or any effect in law, they won. The net result of the contest is a demonstration by successful candidates that they were successful. Nothing growing out of the recount of the vote cast any doubt upon the election of those returned as elected by the election board, and the court took meticulous care in every order made by it to protect and to

safeguard the rights of these candidates. An intelligent consideration of the proceedings relative to the recount of the vote should have indicated that an election contest was not necessary and that the successful candidates could have obtained office expeditiously by proceeding by quo warranto.

Naturally, I concur in the judgment of the court, inasmuch as the record itself shows that the candidates now declared elected were declared elected by the only returns in existence which could establish their election.