## Taylor Township Election

*Chauncey M. Depuy* and *Merrill W. Kerlin*, for Gerald Peck.

*John W. Mentzer*, for Guy Oakman.

SHEELY, P. J., September 26, 1951.—On August 3, 1951, the Court of Common Pleas of Fulton County entered an order directing that the ballot box of Tay-

lor Township be opened to enable a recount to be made of the votes for the Democratic nomination for the office of county treasurer at the primary election held on July 24, 1951. The order named the persons by whom the recount was to be made and fixed the time and place for opening the box. It was also directed that notice of the order be given to each of the Democratic candidates for treasurer by personal service by the Sheriff of Fulton County so that each might be present at the time of said recount either in person or by attorney or his duly appointed representative. The order was entered pursuant to a petition of three electors of Taylor Township marked filed in the office of the prothonotary on August 1, 1951, which was the last day for filing such petitions, and which purported to be verified by an affidavit dated August 1, 1951.

On the day fixed by this order none of the candidates appeared and the court proceeded to make a recount of the ballots in Taylor Township. The recount showed that Guy F. Oakman had received 81 votes, Helen B. Mellott 4 votes, and Gerald Peck 15 votes, whereas the official return sheets had credited Oakman with 83 votes (the difference being due to two defective ballots counted by the election board but held by the court to be void), and the county board of elections was directed by order dated August 21, 1951, to correct the official returns accordingly. The official returns had credited Oakman with a total of 475 votes in the county and Peck with a total of 474 votes. The effect of the correction was to credit Peck with 474 votes and Oakman with 473 votes, thereby changing the result of the election.

On August 31, 1951, Guy F. Oakman presented a petition praying that all proceedings upon the petition of August 1, 1951, and the official return made pursuant thereto be set aside and that the original return of the county board of elections be substituted therefor.

A rule to show cause was issued, returnable September 11, 1951. Answers to the petition were filed by Peck and by the county board of elections. No answer was filed by petitioners but they appeared in person at the hearing held on that date. At the hearing it was stipulated by all parties concerned that the petition for recount was submitted to the three petitioners by an unnamed third person on the late afternoon or early evening of August 1, 1951, at their respective homes, and that none of the three petitioners appeared or signed the petition before the official who signed the jurat, nor did they make affidavit thereto before anyone. The prothonotary had been contacted by telephone on August 1, 1951, concerning the filing of the petition and had told the person calling that he would be out of town during the afternoon and evening. He was told that the petition would be left at his home and when he returned to his home about 11:30 p.m. he found the signed petition there. The following morning he noticed that the jurat was not completed and he then completed it and affixed his seal and marked the petition filed as of August 1, 1951. None of the petitioners appeared before him at any time. It was further stipulated that no notice of the recount or of the order of court of August 3, 1951, was served upon Oakman or Peck as directed by the court, and that Oakman had no actual notice of the recount until the Saturday (August 18th) before the recount was made, and did not know that he was permitted to attend.

Section 1701(*a*) of the Election Code of June 3, 1937, P. L. 1333, 25 PS §3261, provides for the opening of a ballot box and a recount of the votes by the court of common pleas, or a judge thereof, "if three qualified electors of the election district shall file, as hereinafter provided, a petition duly verified by them, alleging that . . . they believed that fraud or error . . .

was committed in the computation of the votes cast . . .". Subsection (*b*) provides that the petition be filed in the office of the prothonotary, together with a cash deposit or bond as therein provided. It is contended by Oakman that the petition in the present case was not filed in the office of the prothonotary, and was not duly verified by petitioners, and that the court was therefore without jurisdiction to make the recount.

The fact that the petition was left at the home of the prothonotary, pursuant to prior arrangement, instead of being filed in the office of the prothonotary, would not invalidate the proceedings, although such practice is certainly not to be encouraged. See Polhemus Appeal, 32 Pa. 328 (1858), where a judgment note was sent to the prothonotary at his residence at 11 p. m. and was marked filed by him as of that date and the following morning was entered on the judgment docket; Home Savings Fund v. King, 113 Pa. Superior Ct. 400 (1934), where the prothonotary received a judgment note by mail at 9:45 a.m., filed it in his office at once, and indexed it the following morning; Kauffman's Appeal, 70 Pa. 261 (1871), where the prothonotary received a note on Sunday and the following day entered judgment and issued execution; and United States v. Rizak, 30 F. (2d) 449, and 451 (1929), where a declaration of intention to become a citizen was taken by the prothonotary at a church meeting.

The effect of irregularity in affidavits and other procedural requirements in connection with election contests has been considered in a number of cases, and it has been held that where the petition was not verified as required by the act of assembly, the court acquired no jurisdiction of the proceedings. In North Union Township Election Case, 250 Pa. 98, 100 (1915), one of the persons signing and swearing to the petition was not a qualified elector and the court said: " 'An affidavit

of the required number of qualified electors is essentially necessary to give jurisdiction.' " Where the statute required the filing of a bond within 10 days after the filing of the petition for an election contest and the parties filed an unsealed bond which was approved by the court, the Supreme Court, holding the bond insufficient, said:

"The filing of such bond within this time limit is made not only a condition of the petitioners' right to proceed with their contest, but a condition as well of the Court's jurisdiction to hear and determine the contest": Moritz's Contested Election, 256 Pa. 537, 541 (1917). Where the statute required the bond to be signed by five petitioners and two sureties it was held that a bond signed by six persons who were petitioners and one who was not was insufficient, as the act required two sureties who were not petitioners, and that the bond could not be amended: Knoxville School District Election, 274 Pa. 354 (1922). In Morrison et al. v. Shealer, 282 Pa. 427 (1925), it was held that an affidavit to a petition for an election contest which omitted to state that the return of the election was incorrect was fatally defective, and the court quoted with approval the opinion of Judge Mitchell in Contested Election of Division Inspectors, 11 Phila. 380, that such affidavits must substantially follow the language of the statute and a failure to do so constitutes a jurisdictional defect. In the opinion of Judge Mitchell it was further held that defective affidavits cannot be amended as amendments cannot be permitted "of an omitted prerequisite necessary to confer jurisdiction, nor of a matter essential to the frame of the petition."

The precise question here presented was before the Court of Common Pleas of Northumberland County in the case of Kulpmont Borough, 18 Northumb.

130 (1946), on facts which were identical with the facts here presented and Judge Fortney held that the petition must be dismissed. The only difference between that case and the present case is that there the motion to dismiss was apparently made before the box was actually opened whereas in the present case the question was not raised until after the recount was completed and had indicated a change in the results of the election. But to change the results of the election the recount must have been valid and legal and within the jurisdiction of the court. A recount made by an unauthorized person would be a nullity and could have no effect upon the election. Without a proper petition filed under the provisions of section 1701 of the Election Code the court would have no authority to order a recount, and a recount made by the court without authority would likewise be a nullity. The validity of the recount must depend upon the petition and here it is admitted that the petition filed was not duly verified. Had the petition as filed, with the jurat not completed, been submitted to the court the court would have refused to order the ballot box opened both because section 1701 requires the petition to be "duly verified", and because the Act of April 9, 1915, P. L. 72, 12 PS §514, provides that a judge shall not "in any matter, case, hearing, or proceeding before him, receive or consider any petition, or paper in the nature of a petition alleging any matter of fact, unless the petition or paper is duly verified as to such allegations." The unauthorized act of the prothonotary in completing the jurat after the petition was filed, and thereby making it appear that it was duly verified when filed, cannot have the effect of giving the court jurisdiction. As to the effect of the wrongful or negligent act of a court official see: Singer v. Del. L. & W. R. R., 254 Pa. 502, 505 (1916); Nixon v. Nixon, 329 Pa. 256, 260

(1938). As stated in Horter v. Cohen, 90 Pa. Superior Ct. 174, 175 (1926):

"If not sworn to, its character is not such as is contemplated by the act; instead of its being a document verified by the sanctity of the oath, it is a mere narration, and amounts to nothing. The absence of verification is fatal. . . ."

Even had petitioners appeared before the prothonotary on August 2nd and made affidavit to the petition, it would have been invalid since an invalid petition cannot be amended, after the time for filing it has elapsed, to supply a jurisdictional requirement: Contested Election of Division Inspectors, 11 Phila. 380; Moritz's Contested Election, 256 Pa. 537, 542 (1917). Since the absence of verification goes to the jurisdiction of the court the fact that the question was not raised until after the recount is immaterial. The result is unfortunate but the fault lies with petitioners in filing an unverified petition.

Counsel for Peck contends that the requirement of verification is directory only and is not mandatory, citing American Labor Party Case, 352 Pa. 576 (1945). While we recognize the rule that where a requirement of the statute is merely directory a failure to comply therewith is not fatal, we cannot regard the requirement of verification as being merely directory in the light of the Act of 1915, supra, which forbids the court to receive a petition alleging facts unless it is duly verified. Furthermore, the requirement of verification in section 1701 is of the essence of the thing required. That section makes the opening of ballot boxes easy to attain, and properly so, since the primary purpose of the section is to secure an accurate count and a correct return of ballots actually cast at elections (Koch Election Contest Case, 351 Pa. 544, 549 (1945)), but it was not intended to do away with all formality. The purpose of the requirement of an

allegation that "upon information which they consider reliable they believe that fraud or error . . . was committed in the computatiion of the votes cast," etc., and that the petition should be verified, was to require some basis for the opening of the boxes and to prevent. the filing of petitions for the sole purpose of making a fishing expedition.

It is further contended by counsel for Peck that since Oakman admittedly had actual notice of the recount proceeding three days before the date set for the recount, he should be held to have waived the defect. While it might be true that the purpose of the notice to the candidates under section 1701 is not for the purpose of acquiring jurisdiction of their persons, but is only for the purpose of giving them notice of the recount so that they might be present, and that the object of the contest is to investigate the correctness of the returns and the only purpose of the petition is to set the machinery of investigation in motion (Moock v. Conrad, 155 Pa. 586, 598 (1893)), it does not follow that a failure to object would give the court jurisdiction which it did not otherwise have. The defect was not merely formal; the petition has never been verified, but it was improperly made to appear to have been verified by the unauthorized act of a court official.

The only remaining question is that of costs. Petitioners deposited $50, which is required to be forfeited to the county upon the opening of the ballot box, if it should not appear that fraud or substantial error was committed in the computation of the votes, otherwise to be returned to them. The effect of our decision is that the court had no power to direct the opening of the box; hence, the recount is a nullity and shows neither error nor the lack of error. Petitioners are therefore entitled to a refund of their deposit, but since all proceedings were taken at their instance the total

costs of the proceedings, including the compensation to the tellers, will be deducted therefrom.

And now, September 26, 1951, it is ordered and decreed that the order of this court entered on August 3, 1951, directing the opening of the ballot box in Taylor Township, Fulton County, Pa., and the order of this court of August 21, 1951, certifying the result of the recount of the ballots in the ballot box and directing the county board of elections to correct its records accordingly, be and they are hereby set aside and the county board of elections is now directed to remove from its records any corrections made pursuant thereto. It is further ordered that the sum of $50 deposited by petitioners be refunded to them after deducting therefrom all costs of this proceeding, including the compensation paid to the tellers appointed by the court.